## KALI SEAFOOD, INC., Plaintiff, Appellant,

v.

## HOWE CORPORATION, Defendant, Appellee.

### No. 89–1420.

United States Court of Appeals, First Circuit.

Heard Sept. 11, 1989.

Decided Sept. 29, 1989.

Zaida Prieto Rivera, San Juan, P.R., with whom Ledesma, Palou & Miranda, Hato Rey, P.R. was on brief, for plaintiff, appellant.

Luis Sanchez–Betances, with whom Sanchez–Betances & Sifre, Hato Rey, P.R., was on brief, for defendant, appellee.

Before SELYA, Circuit Judge, COFFIN and FAIRCHILD *, Senior Circuit Judges.

SELYA, Circuit Judge.

Plaintiff-appellant Kali Seafood, Inc. (Kali) is a Puerto Rico corporation engaged in commercial fishing activities. While outfitting a vessel for service in the Caribbean, Kali perhaps recalled the apothegm often attributed to no less a luminary than Benjamin Franklin[1]: "Fish and visitors

---

\* Of the Seventh Circuit, sitting by designation.

1. The epigram appears in the "January" chapter of *Poor Richard's Almanac* (1736). Other accomplishments aside, Franklin was unoriginal on this occasion. He cribbed the idea from the

Earl of Oxford's quondam secretary, John Lyly, author of *Euphues: The Anatomy of Wit* (1579) ("[f]ish and guests in three days are stale"). Lyly, in turn, was likely paraphrasing a hoary Roman playwright: "No guest is so welcome in

stink in three days." At any rate, Kali ordered a seawater icemaking machine designed and manufactured by defendant-appellee Howe Corporation (Howe). The apparatus, intended to preserve the freshness of the catch, was delivered in July 1980, and installed in October, with distressing consequences: according to appellant, the machine was incapable of producing ice at sea.

An ice-maker not disposed to making ice can nevertheless make an inordinate share of trouble. For some time, Howe attempted to rectify the situation and satisfy Kali's complaints. By mid–1983, however, the parties' relations (if not the daily catch) had gone from cool to frigid. Thoroughly disgusted, appellant called a halt to all remedial efforts, scuttled its piscatorial plans, sold the vessel, and embarked on a rather odd voyage through the courts.

### Procedural Background

In September 1984, Kali sued Howe in an Illinois state court for breach of warranty (Suit No. 1), alleging that the icemaker "did not function properly, in that it would make salt-water ice only infrequently, and in port." While Suit No. 1 was still pending, Kali sued Howe again (Suit No. 2), this time in the United States District Court for the District of Puerto Rico, making substantially the same allegations. For reasons which are obscure on the present record, appellant voluntarily discontinued Suit No. 1 on October 29, 1985 and Suit No. 2 on March 6, 1987.

In July 1987, Kali struck again; it brought the instant action in Puerto Rico's federal district court. Kali's complaint alleged that it purchased the ice-maker for a particular purpose; that defendant knew of the purpose, represented that the machine (a) was "designed to produce ... at least one ton of salt water ice per day," and (b) "would enable plaintiff to operate in the ocean ... having sufficient ice to preserve the [catch]"; that the ice-maker never performed "as designed or as expected" de-

spite representations that it would do so; that the fundamental cause of the difficulty was "the fact that the machine was defectively designed and had manufacturing defects," or, put another way, that the ice-maker "was defective and was not appropriate for the use [that] was intended"; that Howe "was negligent" in designing, manufacturing, and modifying the ice-maker; and that, because of Howe's "breaches of its warranty" and "negligence," plaintiff incurred loss, cost, damage, and expense of varying kinds and amounts.

After allowing full discovery, the district court granted summary judgment, finding plaintiff's suit to be time barred. *Kali Seafood, Inc. v. Howe Corp.*, 709 F.Supp. 285 (D.P.R.1989). This appeal ensued.

### Framing The Issue

We approach this case cognizant that "[w]here the parties agree what substantive law controls in a diversity case, we can—and ordinarily should—accept such a concession." *Moores v. Greenberg*, 834 F.2d 1105, 1107 n. 2 (1st Cir.1987). Both parties to this case urge us to apply Puerto Rico law to the timeliness question. We shall do so.

Of course, summary judgment may stand only if the record demonstrates conclusively "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c). Here, while disputes concerning the ice-maker's alleged shortcomings are rife, the items which bear importantly on timeliness are rather clearcut. They include:

1. Howe knew of plaintiff's requirements and represented that the ice-maker would work satisfactorily. Kali had no notice of any defect in, or problem with, the equipment until it was delivered and installed. Kali promptly complained.

2. From November 1980 through August 1, 1983, the parties were in steady communication "regarding the functioning,

---

a friend's house that he will not become a nuisance after three days." Titus Plautus, *Miles Gloriosus* (205 B.C.).

warranty replacements and repairs of the ice maker." *Kali Seafood,* 709 F.Supp. at 286.

3. The parties' abortive efforts at amelioration ended on August 1, 1983 (the "trigger date") and the limitation period began to run no later than that date. *See Casa Jaime Corp. v. Castro,* 89 P.R.R. 686, 688 (1963) (in contract cases involving defective wares, prescriptive period is counted not from date contract perfected, but from date efforts to reach an understanding were interrupted).

4. Kali first sued more than a year after the trigger date.

5. By operation of law, voluntary dismissal of a timely-instituted suit has the effect of revivifying the statute of limitations. *See Silva–Wiscovich v. Weber Dental Mfg. Co.,* 835 F.2d 409, 410 (1st Cir. 1987) (discussing tolling of statute of limitations under Puerto Rico law); *Burke v. Compagnie Nationale Air France,* 699 F.Supp. 1016, 1017 (D.P.R.1988). Thus, if the original suits were seasonably brought,[2] the present action—commenced within five months of the discontinuance of Suit No. 2—survives.

We have noted before that "[p]reclusory time bars are appropriately examined under Rule 56 if the relevant facts are sufficiently clear." *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). This is such a case. Accordingly, our inquiry reduces to whether the district court, given the lack of any genuine, material dispute touching upon timeliness, wielded the proper legal yardstick in ascertaining that the action was time barred.

### The Choices

The parties nominated three candidates and asked the lower court to elect which candidate governed the timeliness question. Alluding to the general statutory provision applicable to contracts and other personal claims "for which no special term of prescription is fixed ...," P.R. Laws Ann. tit. 31, § 5294, appellant contended that it had fifteen years within which to sue. Appellee eschewed the general in favor of the specific, exhorting that the controlling statute was either P.R. Laws Ann. tit. 31, § 3847 (actions for hidden defects "shall be extinguished after six months, counted from the delivery of the thing sold") or P.R. Laws Ann. tit. 31, § 5298(2) (actions for negligence prescribe in one year "from the time the aggrieved person had knowledge thereof").

The district court characterized plaintiff's claim as sounding in "breach of warranty for alleged defects and faults in the design and manufacturing of the ice maker by defendant." *Kali Seafood,* 709 F.Supp. at 287. For that reason, the court applied section 3847 and ruled "plaintiff's cause of action had prescribed" before Suit No. 1 was filed, the critical fact being that "more than six months had elapsed" between the trigger date and the institution of legal action. *Id.*[3]

The contestants hawk the same array of choices on appeal. If appellant is correct, it had fifteen years within which to file, and its suits (including this one) were timely. If, however, either of defendant's theories hold water, the trail has grown too cold and the ruling below must be affirmed.

### Discussion

The leading case in Puerto Rico concerning a vendor's liability for hidden defects is *Ferrer v. General Motors Corp.,* 100 P.R.R. 244 (1971). In *Ferrer,* the Puerto

---

**2.** We have no need to differentiate between the earlier initiatives. Suit No. 1 was instituted in September 1984 (some thirteen months after the trigger date). Suit No. 2 was instituted in January 1985. For the purposes at hand, the four month difference is immaterial. As we explain *infra,* either both suits were timeous (i.e., brought within fifteen years after the contract was made), or both were untimely (i.e., brought more than a year after the trigger date).

**3.** To the extent that the complaint was for negligence, plaintiff would not be assisted; a negligence action would have been barred by the one-year statute of limitations. *See* P.R. Laws Ann. tit. 31, § 5298(2); *see also Kali Seafood,* 709 F.Supp. at 287 & n. 2. Appellant does not contest this point.

Rico Supreme Court elucidated four requirements which underlie such an action:

> [I]n order to be subject to warranty the hidden defects (1) should be unknown to the vendee, (2) the defect should be serious or very important for it to render the thing unfit for the use to which it was destined or which diminishes said use in such manner that had the vendee had knowledge thereof he would not have acquired it or would have given a lower price for it, (3) that [the defect] is pre-existent to the sale and (4) that the action be brought in the legal period, which is of six months counted from the delivery of the thing sold.

*Id.* at 254; *see also In re Bird Copying Machines, Inc.*, 618 F.2d 883, 885 (1st Cir. 1980) (same; citing and quoting *Ferrer*); P.R. Laws Ann. tit. 31, §§ 3841–3843 (containing substantive statutory provisions anent hidden-defect warranty).

To all appearances, this case slips snugly within the hidden-defect integument. The complaint paints a vivid portrait of a good-faith purchase of sophisticated machinery, festooned with a cornucopia of seller's representations and warranted for a highly specialized purpose. When delivered and installed, the equipment proved to contain "faults or hidden defects," P.R. Laws Ann. tit. 31, § 3842, which "render[ed] it unfit for the use to which it was destined...." Tit. 31, § 3841. The defects were "unknown to the vendee," "very important," and "pre-exist[ed] ... the sale...." *See Ferrer*, 100 P.R.R. at 254. The dysfunctional ice-maker was worse than useless, a circumstance which leaves room for only one inference: had Kali possessed advance knowledge of the defects, it "would not have acquired" the product. *See id.* The case, then, as plaintiff pleaded it, was plainly one for breach of the statutory hidden-defect warranty. *Cf., e.g., Carroll v. Capalbo*, 563 F.Supp. 1053, 1058 (D.R.I.1983) ("if it walks like a duck, and it squawks like a duck, it must be a duck").

Kali concedes in its brief that "[t]he complaint alleged breach of warranty," but asserts that Puerto Rico law gives a claimant "the prerogative ... to choose [its] cause of action." In effect, plaintiff seeks to confess and avoid, arguing that "a claim for hidden defects does not exclude a contract claim." Because this asseveration rests almost exclusively upon Kali's interpretation of the Puerto Rico Supreme Court's decision in *Marquez v. Torres Campo*, 111 P.R. Dec. 854 (1982) (official English translation: No. R–79–101, slip op. (P.R. Jan. 18, 1982)), we examine the case in some detail.

In *Marquez*, authorities ordered a quarantine when tuberculosis was discovered at defendant's farm. Disregarding the ban, defendant sold twenty-five heifers to an unsuspecting plaintiff. When the chicanery surfaced, plaintiff's ranch was placed under quarantine (adversely affecting many more head of cattle) and his business suffered in diverse ways. Defendant claimed that plaintiff's ensuing suit was barred by the hidden-defect limitation period.[4] Puerto Rico's highest tribunal disagreed, ruling that "the action of warranty for hidden defects does not by itself exclude other actions that may lie *under the special circumstances of the case*, particularly the action for deceit whose purposes and effects are different from those of the warranty action." *Id.* at 1094 (emphasis supplied). The court held that Marquez' suit sounded in deceit, not warranty, *id.* at 1105, and thus enjoyed the benefit of a longer limitation period.

Kali's unblinking reliance on *Marquez* is, we think, mislaid. A plaintiff in a hidden-defect case does not *always* have an option to select a different cause of action. To the contrary, the configuration of each case must be independently analyzed. *See id.* at 1100 (quoting *Gonzalez v. Centex Constr. Co.*, 103 P.R. Dec. 82, 86 (1974) ("each case depends naturally on the juridical figures in play")); *id.* at 1102–03 (commenting favorably upon practice of "showing flexibility, deciding in each particular case if the

---

4. For sales of livestock, actions based on a hidden-defect warranty must be filed within forty days. P.R. Laws Ann. tit. 31, § 3853; *Marquez,* slip op. at 1096 & n. 7. Marquez filed suit well after that period had elapsed.

special rule should be applied, and excluding the general rule when it is in conflict with the special one"). Thus, the *Marquez* court constructed the following analytic framework:

[W]e may conclude that: (1) from the facts of a case where an object with defects has been sold, the possibility may arise that the special warranty action for hidden defects and/or one or several actions of a general nature may be filed which are not incompatible per se; (2) the affected purchaser may choose to bring the action he deems more appropriate to protect his rights, provided he does not use the general action to evade applicable rules related to the special action that are incompatible with the provisions of the general action; (3) when elucidating, between two incompatible provisions, which one is applicable, the particular circumstances of the case and the rights claimed by the affected buyer should be examined in order to determine if the special rule is the applicable one and if it excludes the general one.

*Id.* at 1103.

In *Marquez,* that elucidation led away from the "special" hidden-defect rule. First, the peculiar circumstances—related to public health, pervasive government regulation, and the danger of contagion—charged the case with an "undeniable public interest." *Id.* at 1104. Second, the gravamen of plaintiff's complaint in *Marquez* was for deceit, not breach of warranty. As the court wrote:

[P]laintiff's cause of action arises, not from the objective fact of the defect in the object of the contract, which is what gives life to an action of warranty, but from a subjective circumstance provoked by the defendant's deceitful action which resulted in damages that go beyond the defect in the object of the contract and which is thus outside the frame of the concept of warranty. As a question of fact, the problem did not actually arise from the defect of the cattle sold, which presumably were not all sick at the time of the sale, but as a result of the presence of the contagious germ in the herd to which they belonged.

The complaint adequately shows that the cause of action brought by the plaintiff was not a warranty action, but an action for compensation because of contractual deceit.

*Id.* at 1105.

The instant case is at a considerable remove from *Marquez.* This is a purely commercial dispute, not implicating the public interest to any unusual extent. Appellant's claim stems directly from the icemaker's condition and lands squarely within the encincture of warranty doctrine. There are no "special circumstances." *See id.* at 1094. Although the complaint limns Howe as both overconfident and grossly inept, the "insidious machinations," *id.* at 1096, which characterized the vendor's conduct in *Marquez* are absent. Fraud has not been pleaded and cannot be implied. *See* Fed.R.Civ.P. 9(b) (to aver fraud, "the circumstances constituting fraud ... [must] be stated with particularity"); *see also McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir.1980). And, unlike an action for deceit "whose purposes and effects are different from those of the warranty action," *Marquez,* slip op. at 1094, Kali's proposed contract action would have precisely the same purpose, and accomplish the same effect, as would a warranty action. In fine, this is a prototypical hidden-defect case—no more, no less.

Considering "the particular circumstances of the case and the rights claimed by the affected buyer," *id.* at 1103, appellant's argument must fail. If *Marquez* permitted a plaintiff in an ordinary hidden-defect case to sue for breach of contract beyond the six-month prescriptive period, then section 3847 would have no meaning. Because virtually every sale results from a contract (express or implied), a disappointed vendee could always bypass the statute's narrow window of opportunity in favor of the thirty-times-wider window afforded by P.R. Laws Ann. tit. 31, § 5294. Unrestrained access to such an end run would serve completely to eviscerate the special statute of limitations which the legislature thought should apply to product sales in Puerto Rico. We do not believe that the legisla-

tive will can be flouted with such ease, or that Commonwealth law is so one-sided as to make the appropriate limitation period depend strictly and solely on how a plaintiff chooses to costume its complaint. We are not prepared to interpret *Marquez* as demanding that courts mindlessly sacrifice substance on the altar of form.

We sum up briefly. In this case, plaintiff's complaint states a near-classic cause of action for breach of the hidden-defect warranty. We do not think that the Puerto Rico Supreme Court, in a situation of this sort, would allow Kali freely to resort to the 15-year residual statute of limitations for contract actions as to which no particular prescriptive term applies. That is to say, appellant may not willy-nilly "use the general action to evade applicable rules related to the special action." *Marquez*, slip op. at 1103. We conclude, therefore, that the district court did not err in granting *brevis* disposition.[5]

### Conclusion

We need go no further. Fishing in troubled waters to begin with, plaintiff reached the spawning-ground too late. Because the instant action is one for breach of a warranty against hidden defects, maintenance of it is barred by the six-month prescriptive period contained in P.R. Laws Ann. tit. 31, § 3847. It follows that the judgment below must be

*Affirmed.*

---

5. We reach this conclusion by independent analysis, but derive added support for it from a source we have often used before: "the interpretation of Puerto Rican law given by federal judges who preside in that district." *In re Sucesores de Abarca, Inc.*, 862 F.2d 394, 396 (1st Cir.1988); *Rodriguez v. Escambron Dev. Corp.*, 740 F.2d 92, 96 (1st Cir.1984) (listing cases).

We believe that the district court's selection of an applicable limitation period from several local-law choices furnishes an appropriate occasion for some degree of deference. *See, e.g., Oliveras–Salas v. Puerto Rico Highway Authority*, 884 F.2d 1532, 1535 (1st Cir.1989); *Ramirez de Arellano v. Alvarez de Choudens*, 575 F.2d 315, 319 (1st Cir.1978) (dicta).