USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1047 JORGE RIVERA SURILLO & CO., INC., Plaintiff - Appellant, v. FALCONER GLASS INDUSTRIES, INC., ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen Consuelo Cerezo, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin, Circuit Judge, _____________ and Keeton,* District Judge. ______________ _____________________ Rafael Baella-Silva, with whom Luis Barcel -Gener and Baella ___________________ __________________ ______ & Barcel , were on brief for appellant. _________ Thomas W. B. Porter, with whom DyKemata Gossett PLLC was on ____________________ _____________________ brief for appellees. Pedro A. Delgado-Hern ndez, Solicitor General, and Carlos ___________________________ ______ Lugo-Fiol, Deputy Solicitor General, Department of Justice, _________ Commonwealth of Puerto Rico, were on brief for the Commonwealth of Puerto Rico. ____________________ October 12, 1994 ____________________ ____________________ * Of the District of Massachusetts, sitting by designation. TORRUELLA, Chief Judge. Plaintiff-appellant Jorge ____________ Rivera-Surillo & Co., Inc. ("JRS"), appeals the district court's grant of summary judgment in favor of the defendants-appellees Falconer Glass Industries, Inc. ("Falconer Glass"), Falconer Lewiston, Inc. ("Falconer Lewiston") and Guardian Industries Corp. ("Guardian") on JRS's claims for breach of contract, and JRS appeals the district court's denial of its motion to alter or amend the judgment. We affirm. BACKGROUND BACKGROUND __________ On November 2, 1990, subcontractor JRS entered into a subcontract with contractor G.R.G. Engineering, S.E. ("GRG"), to replace the windows at Building 31 at the Roosevelt Roads Naval Base in Ceiba, Puerto Rico. GRG was the Navy's prime contractor for this project. The prime contract between the Navy and GRG contained various specifications for the new window glass. Among the specifications were the requirements that the glass provide 39% visible light transmission and .005% ultraviolet light transmission. Paragraph 1.3 of the prime contract specifications provided that the glass was to be delivered to the site in unopened containers, stored in a safe, dry place, and was not to be unpacked until needed for installation. JRS ordered the glass for the project from Falconer Glass pursuant to a purchase order dated November 16, 1990. The glass was packed and shipped by Falconer Lewiston. Guardian is alleged to be the successor in interest to Falconer Glass. -2- The glass was delivered to JRS in or about April, 1991. JRS stored the glass in its warehouse. JRS did not inspect the glass until February of 1992, when it began installation. In February 1992, JRS noticed defects in the glass. Glass panes which had recently been installed were stained with rainbow-like marks, which resulted in an iridescent effect on their surface. The staining did not show when the glass was taken out of its packaging, but rather appeared two or three days thereafter. Laboratory tests performed at the request of JRS showed that the glass did not meet the Navy's requirements for visible light transmission. JRS notified the defendants of the alleged defects, for the first time, in a telephone conversation on February 25, 1992, and again, in writing, in a letter dated March 2, 1992. The defendants did not replace the glass because JRS failed to comply with their requirements for presentation of claims. These requirements were set forth in the defendants' "General Terms and Conditions of Sale" ("General Terms"). Falconer Glass and Falconer Lewiston both sent JRS copies of the General Terms. The General Terms were set forth on the order form that Falconer Glass sent JRS along with its quotation. Additionally, Falconer Lewiston provided JRS with the General Terms when Falconer Lewiston acknowledged the order. Paragraph 16 of the General Terms provided: Presentation of Claims -- Every claim on ______________ account of defective or non-conforming _________________________________________ material or from any other cause shall be _________________________________________ deemed waived by the purchaser unless _________________________________________ -3- made in writing within ten (10) days of _________________________________________ the receipt of the goods to which such _________________________ claim relates for breach of contract or warranty and any action must be commenced within one year after tender of goods by the Seller, or receipt of goods by the Purchaser or after the cause of action has accrued, whichever shall be applicable in the circumstances. (emphasis added). JRS filed suit for breach of contract against the defendants on May 22, 1992. The defendants moved for summary judgment. The district court granted the motion and final judgment was entered on November 18, 1993. The district court found that JRS's claim was barred by Section 260 of the Puerto Rico Commerce Code which establishes a thirty day time limit for filing of certain claims. 10 L.P.R.A. 1718 (1989). The court also indicated that the 10-day presentation-of-claims provision in the General Terms may, by itself, determine the outcome of the case, but found that issue to be moot in light of Section 260. On December 3, 1993, JRS filed a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). The court denied the motion by order dated March 1, 1994. STANDARD OF REVIEW STANDARD OF REVIEW __________________ Entry of summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Mack v. Great Atlantic & Pacific Tea Co., ____ ________________________________ -4- 871 F.2d 179, 181 (1st Cir. 1989). Our review of a district court's grant of summary judgment is plenary. LeBlanc v. Great _______ _____ American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). We view the _________________ record in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Id. ___ We review the trial court's decision denying a motion to alter or amend a judgment for manifest abuse of discretion. Appeal of Sun Pipe Line Co., 831 F.2d 22, 24-25 (1st Cir. 1987), ___________________________ cert. denied, 486 U.S. 1055 (1988). ____________ DISCUSSION DISCUSSION __________ The district court found that this case is governed by the Commerce Code of Puerto Rico. Chapter 51 of the Commerce Code provides that the Code applies to all commercial transactions, regardless of whether they are consummated by merchants. P.R. Laws Ann. tit 10, 1002. The district court found, and the parties do not dispute, that they were merchants engaged in a commercial transaction. The Code contains specific provisions governing commercial purchases and sales. Section 243 defines "commercial purchase and sale" to which the code applies: A purchase and sale of personal property for the purpose of resale, either in the form it was purchased or in a different form, for the purpose of deriving profit in the resale, shall be considered commercial.--Commerce Code, 1932, 243. P.R. Laws Ann. tit. 10, 1701. The district court determined that the 30 day time -5- limitation of Section 260 applied to JRS's claim. Section 260 provides: -6- Failure to file a claim on account of defects. A purchaser who has not made any claim based on the inherent defects in the article sold, within the thirty days following its delivery, shall lose all rights of action against the vendor for such defects.--Commerce Code, 1932, 260. P.R. Laws Ann. tit. 10, 1718. Because JRS failed to claim any defects in the glass within 30 days of delivery, the court found that Section 260 barred its suit against the defendants. On appeal, JRS contends that the district court erred in applying Section 260 to this case. JRS contends that the present case is an action for breach of contract and the applicable statute of limitations is fifteen years. Camacho v. _______ Iglesia Cat lica, 72 P.R.R. 332, 340 (1951); Saavedra v. Central ________________ ________ _______ Coloso, Inc., 85 P.R.R. 404, 405 (1962). The statute of _____________ limitations for actions for breach of contract is determined by Section 1864 of the Puerto Rico Civil Code which provides a fifteen year statute of limitations for actions "which are personal and for which no special term of proscription has been fixed." P.R. Laws Ann. tit. 31, 5294. Hence, the fifteen year statute of limitations period would apply only if no other proscription, including that provided by Section 260 of the Commerce Code, were applicable to this case. In order to determine whether Section 260 applies to this case we are guided by the Puerto Rico Supreme Court's decision in Julsrud v. Peche de Puerto Rico, Inc., 115 P.R.R. 23 _______ __________________________ -7- (1983). In Julsrud, the court distinguished circumstances under _______ which the statute of limitations for breach of contract applies from circumstances to which claims of defects apply: The first distinction we must consider is that existing between another thing (aliud) and defective thing. When a _____ specific thing different from the one agreed upon is delivered, the figure of another thing or aliud pro alio, comes _______________ into play, which allows the buyer to bring an action for breach of contract within the corresponding period of limitation. When the very thing required is delivered, even if it is defective, the seller has complied with his obligation to furnish the thing required. What we have then is the delivery of a defective thing, and the actions available are the aedilitian actions--the redhibitory or quanti minoris actions-- _______________ whose life is much shorter than the action for breach of contract. 115 P.R.R. at 28-29 (footnote and internal citation omitted). Equating "inherent defect" to a "hidden defect," id. at ___ 31, the court defined a "hidden defect" to which the thirty day limitation of Section 260 applies: A hidden defect is that which escapes the eye of an ordinarily diligent person, the defect that is inherent to the imperfect way in which the merchandise was manufactured, packed, handled, or stored, and which renders the thing inadequate for the use for which it is destined. Id. at 30 (internal citation omitted). ___ JRS has not claimed that defendants failed to deliver the glass. Rather, they claim that the glass delivered was inadequate for its intended use. JRS has indicated that the staining of the glass did not start to show when the glass was -8- taken out of its packaging, but rather, two or three days thereafter, and JRS contends that the source of the defect was the glass manufacturing process. JRS's claims falls squarely into the definition of "inherent" or "hidden" defect set forth in Julsrud. _______ Furthermore, this Court has held that litigants cannot circumvent a specific provision of the Puerto Rico Code by characterizing their claims generally as a "breach of contract" in order to obtain the benefit of a longer statute of limitations period. Kali Seafood, Inc. v. Howe Corp., 887 F.2d 7, 9 (1st ___________________ __________ Cir. 1989); Betancourt v. W.D. Schock Corp., 907 F.2d 1251 (1st __________ _________________ Cir. 1990). In Kali, we determined that litigants who had a claim ____ for hidden defects, to which the six month statute of limitations period of P.R. Laws Ann. tit. 31, 3847 applied, could not circumvent that limitations period by characterizing their claim as one for breach of contract: Because virtually every sale results from a contract (express or implied), a disappointed vendee could always bypass the statute's narrow window of opportunity in favor of the thirty-times- wider window afforded by P.R. Laws Ann. tit. 31, 5294. Unrestrained access to such an end run would serve completely to eviscerate the special statute of limitations which the legislature thought should apply to product sales in Puerto Rico. We do not believe that the legislative will can be flouted with such ease, or that Commonwealth law is so one- sided as to make the appropriate limitation period depend strictly and solely on how a plaintiff chooses to costume its complaint. -9- 887 F.2d at 11-12. See also M rquez v. Torres Campo, 111 P.R. _________ _______ _____________ Dec. 854 (1982) (official English translation: No. R-79-101, slip op. at 1103 (P.R. Jan. 18, 1982) (affected purchaser may not use a general action to evade applicable rules related to a special action that are incompatible with the provisions of the general action). We therefore conclude that the district court did not err in applying Section 260 to this case.1 JRS's remaining arguments were raised for the first time in its motion to alter or amend the judgment under Fed. R. Civ. P. 59(e) which the district court denied. JRS raised four arguments in its Rule 59(e) motion which it now pursues on appeal: 1) when the defendants agreed to the Navy specifications, they superseded the 10-day term contained in their order and waived the 30-day term prescribed by Article 260 of the Puerto Rico Commerce Code; 2) defendants somehow acted in bad faith by failing to make clear at the time of contracting that, despite Navy specifications, defendants would limit the time in which to notify claims to the 10 or 30 day notice periods provided in the "General Terms" and Section 30 respectively; 3) the inclusion by the defendants in the "General Terms" of a different limitation period from the one implied by the Navy Specifications, constitutes an act contrary to good faith and as such, should be rendered invalid and illegal; and 4) insofar as Section 260 ____________________ 1 JRS contends that Section 260 does not apply to specially manufactured products. However, JRS has failed to cite any legal authority in support of this contention. We have not found any such authority and decline their invitation to create new law. -10- requires a purchaser to make a claim for inherent defects before obtaining knowledge of their existence, the provision is unconstitutional because it violates the purchaser's property rights without due process of law. This court has explained that a motion under Rule 59(e) is not appropriately used to present new issues or evidence: Rule 59(e) motions are aimed at reconsideration, not initial __ consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued. Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence. They may not be used to argue a new legal theory. Federal Deposit Ins. Corp. v. World Univ., Inc., 978 F.2d 10, 16 ___________________________ _________________ (1st Cir. 1992) (internal citations and quotations omitted). Because the first of these arguments raises issues addressed by the district court in its opinion, we address it below. The remaining three arguments, however, neither "clearly establish a manifest error of law" nor "present newly discovered evidence" and are therefore not properly before us. Id. ___ Paragraph 1.3 of the prime contract specifications in the contract between the Navy and GRG provided: 1.3 DELIVERY, STORAGE, AND HANDLING Deliver products to the site in unopened containers, labeled plainly with manufacturers' names and brands. Store glass and setting materials in safe, dry locations and do not unpack until needed for installation. Handle and install materials in a manner that will protect them from damage. -11- Throughout this litigation, JRS has contended that they were bound by these specifications and therefore, could not inspect the glass when it was delivered. The district court found that this argument was irrelevant to the issues presented in this case because the contracts between the Navy, GRG, and JRS in no way involve or bind Falconer, Lewiston, or Guardian. Furthermore, the district court noted that the Navy specification referred to "delivery" and "unpacking" and that neither of these terms prohibits inspecting the product to insure its safe arrival and conformance to contract specifications. JRS concedes that the defendants did not enter into a direct contractual relationship with either the Navy or GRG. However, because the Navy specifications were forwarded to the defendants for their acceptance before contracting, JRS contends that the specifications became a medullary part of the contractual relationship between JRS and the defendants. We find several problems with JRS's argument. Like the district court, we do not believe that the Navy specifications prevented JRS from inspecting the glass. Not only do the Navy specifications say nothing about inspection, but the "General Terms" provided to JRS by the defendants contained the following provision: 6. INSPECTION--The Buyer may inspect or provide for inspections at the place of manufacture. Such inspections shall be conducted as not to interfere unreasonably with the manufacturer's operations, and consequent approval or rejection shall be made before shipment of the material. Notwithstanding the -12- foregoing the Buyer shall inspect the material upon his receipt of same, and if the same shall appear not to conform to the contract between the Buyer and the Seller, the Buyer shall immediately notify the Seller of such condition and afford the Seller a reasonable opportunity to inspect the material. No material shall be returned without the Seller's consent. If JRS felt that it should not open the goods for inspection on arrival, it could have arranged to inspect the goods at the place of the manufacturer's operations. Otherwise, it could have arranged to delay delivery until it was ready to use the materials. JRS could have also removed samples of the glass and subjected them to whatever testing it deemed appropriate. Finally, the "General Terms" clearly show that defendants did not intend to incorporate into their contract with JRS any limitation on the inspection of goods but rather required inspection and immediate notification to the Seller of any nonconformity of the goods. Affirmed. ________ -13-