NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-16-1226-FLKu |
| BRENT ROY SEPULVEDA, | Bk. No.   8:13-bk-17965-SC |
| Debtor. | Adv. Pro. 8:14-ap-01003-SC |
| BRENT ROY SEPULVEDA, | |
| Appellant, | |
| v. | **MEMORANDUM**<sup>*</sup> |
| GEORGE ADAMS, JR., | |
| Appellee. | |

Argued and Submitted on March 23, 2017
at Pasadena, California

Filed – April 26, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Scott C. Clarkson, Bankruptcy Judge, Presiding

Appearances:   David C. Codell argued on behalf of appellant
Brent Roy Sepulveda; Ryan Daniel O'Dea of Shulman
Hodges & Bastian LLP argued on behalf of appellee
George Adams, Jr.

Before: FARIS, LAFFERTY, and KURTZ, Bankruptcy Judges.

---

<sup>*</sup> This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, see Fed. R. App. P. 32.1, it has no precedential value, see
9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Chapter 7[1] debtor Brent Roy Sepulveda appeals from the bankruptcy court's judgment in favor of creditor George Adams, Jr. on Mr. Adams's § 523(a)(2)(A) nondischargeability claim. He argues that the court erred by (1) finding that he intended to defraud Mr. Adams and (2) miscalculating the damages award to Mr. Adams. We reject both arguments. Accordingly, we AFFIRM.

**FACTUAL BACKGROUND**

**A.    The joint business venture**

This dispute arises from a business partnership between Mr. Sepulveda and Mr. Adams. In 2000, the parties agreed to form a joint venture whereby they would acquire real property and construct and sell custom homes. In November 2000, they executed a written agreement to construct four custom homes. Mr. Adams was responsible for financing and obtaining construction loans, and Mr. Sepulveda was responsible for the construction of the homes through his company, Sepulveda Builders. Mr. Adams said that Mr. Sepulveda represented that he maintained liability insurance that would cover the construction of the custom homes.

Under the 2000 agreement, the parties constructed a home for Ray and Tracy Arriola in Orange, California (the "Arriola Property") for $1.365 million. In 2004, Mr. Adams and Mr. Sepulveda executed a second written agreement consistent with the terms of the 2000 agreement. The 2004 agreement concerned

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

the construction of a custom home for Robert and Liz Kofdarali in Anaheim, California (the "Kofdarali Property") for $3.1 million. (For convenience, we will refer to the 2000 and 2004 agreements collectively as the "Partnership Agreement.")

**B.    The construction defect lawsuits**

**1.    The Kofdarali lawsuit**

In September 2007, the Kofdaralis filed suit (the "Kofdarali Lawsuit") against Mr. Adams and Mr. Sepulveda in state court for construction defects related to the Kofdarali Property. Mr. Adams asserted that, around this time, he discovered that Mr. Sepulveda's liability insurance did not cover home construction; rather, it only covered home improvement and remodeling. Accordingly, Mr. Sepulveda's insurance carrier refused to defend or indemnify Mr. Sepulveda and Mr. Adams in the Kofdarali Lawsuit. Mr. Adams filed cross-claims against Mr. Sepulveda for indemnity, contribution, and other causes of action relating to fraud and misrepresentation.

The parties to the Kofdarali Lawsuit reached a settlement in September 2010 that excluded Mr. Adams's cross-claims against Mr. Sepulveda. Neither Mr. Sepulveda nor his insurer contributed to the costs of defense or the settlement.

**2.    The Arriola lawsuit**

In May 2008, the Arriolas filed a state court lawsuit (the "Arriola Lawsuit") against Mr. Adams and Mr. Sepulveda for construction defects associated with the Arriola Property. Again, Mr. Sepulveda's insurance carrier denied coverage, and Mr. Adams filed cross-claims against Mr. Sepulveda for contribution and reimbursement.

3

### 3.  The settlement agreement

In January 2011, Mr. Adams and Mr. Sepulveda entered into a settlement agreement ("Settlement Agreement") that resolved Mr. Adams's cross-claims against Mr. Sepulveda in the Arriola Lawsuit and the Kofdarali Lawsuit.  The Settlement Agreement provided that: (1) Mr. Sepulveda would transfer real properties in Yorba Linda, California to Mr. Adams in consideration of the expenses Mr. Adams incurred in defending and settling the Kofdarali Lawsuit and defending the Arriola Lawsuit; (2) the parties would share equally the future costs of defense of the Arriola Lawsuit; and (3) the parties would share equally the costs of the judgment or settlement of the Arriola Lawsuit.  In return, Mr. Adams agreed to dismiss the cross-claims and waive his rights to reimbursement from Mr. Sepulveda for all previously-incurred attorneys' fees, costs, and expenses.

### 4.  The Arriola Lawsuit judgment

In September 2011, the referee in the Arriola Lawsuit awarded the Arriolas $370,116.66 (the "Arriola Judgment") jointly and severally against Mr. Adams and Mr. Sepulveda.  The state court entered the Arriola Judgment on October 17, 2011.

## C.  Mr. Adams's state court action

Mr. Sepulveda partially performed under the Settlement Agreement by transferring the Yorba Linda properties to Mr. Adams.  However, he failed to pay his share of the Arriola Judgment and contribute to the post-January 2011 defense costs of the Arriola Lawsuit.  Therefore, Mr. Adams paid the entire Arriola Judgment himself.

On January 27, 2012, Mr. Adams sued Mr. Sepulveda in state

4

court for fraud and breach of contract arising from Mr. Sepulveda's breach of the Settlement Agreement. In March, he obtained an order for contribution against Mr. Sepulveda in the Arriola Lawsuit for $185,058.28 and recorded an abstract of judgment in that amount against Mr. Sepulveda's residence. In August, he recorded another abstract of judgment against Mr. Sepulveda's residence for $287,517.20, this time in connection with the Kofdarali Lawsuit.

**D.    Mr. Sepulveda's chapter 7 bankruptcy**

On September 23, 2013, Mr. Sepulveda filed his chapter 7 petition.

On January 3, 2014, Mr. Adams filed his complaint to determine nondischargeability of debt under §§ 523(a)(2)(A) and (6). He requested a nondischargeable judgment in the amount of at least $472,575.48.[2]

As to his § 523(a)(2)(A) claim, he alleged that Mr. Sepulveda committed fraud by making multiple false statements of material fact: (1) he falsely represented in 2000 that he had liability insurance coverage for the construction of the custom homes, despite knowing that his liability insurance covered only home remodeling; and (2) he promised in 2011 to pay half of the defense costs of the Arriola Lawsuit and subsequent judgment, but never had any intention to do so. Mr. Adams said that he was ignorant of the true facts and, had he known the truth about the lack of insurance, he would not have gone into business with

---

[2] By order dated July 9, 2014, the bankruptcy court dismissed Mr. Adams's § 523(a)(6) claim. That order is not the subject of this appeal.

Mr. Sepulveda; he also would not have entered into the Settlement Agreement if he had known that Mr. Sepulveda did not intend to comply fully with the terms of the settlement.

In advance of trial on Mr. Adams's § 523(a)(2)(A) claim, the parties submitted their respective trial briefs and declarations and a joint pretrial stipulation. Mr. Sepulveda agreed that he lacked insurance coverage for construction of the custom homes. However, he declared that he never represented to Mr. Adams that he maintained contractor's commercial general liability insurance and that Mr. Adams never expressed to him that liability insurance was important to him or was a requirement for agreeing to the joint venture. In any event, he said that his then-wife and office manager, Chelly Moore, handled all office duties and paperwork, including managing Sepulveda Builders's insurance coverage. He said that she had "complete autonomy" in obtaining and renewing liability insurance for the company and was solely responsible for ensuring proper coverage.

Mr. Sepulveda further stated that he fully intended to comply with the terms of the Settlement Agreement when he executed it. His financial condition deteriorated after he and Mr. Adams executed the Settlement Agreement due to his contentious and lengthy divorce proceedings and declining business income. He planned to borrow money to fulfill his obligations. He offered Mr. Adams $300,000 in settlement of any amounts due on the Settlement Agreement, but Mr. Adams did not accept the offer.

At trial, Mr. Adams's counsel cross-examined Mr. Sepulveda about $200,000 that he received from the sale of his residence in

6

January 2011. Mr. Sepulveda admitted that, although he received the funds around the time that he entered into the Settlement Agreement, he did not set aside any of the monies to pay for defense costs or judgment in the Arriola Lawsuit. Following trial, the bankruptcy court took the matter under advisement.

**E.    The memorandum decision**

The bankruptcy court entered its memorandum of decision on July 5, 2016. It analyzed whether Mr. Sepulveda made a misrepresentation or engaged in fraudulent conduct in connection with the Partnership Agreement and the Settlement Agreement. It concluded that both agreements resulted from Mr. Sepulveda's misrepresentations or fraudulent actions.

The court found that Mr. Sepulveda misrepresented his construction liability coverage in order to induce Mr. Adams to enter into the Partnership Agreement. Mr. Adams discussed insurance coverage with Mr. Sepulveda and made clear that he was concerned with the possibility of future construction defect litigation. Mr. Sepulveda presented Mr. Adams with a certificate of general liability insurance and told him that the policy covered liability for "ground-up" construction of the custom homes.

The court also found that Mr. Sepulveda knew that he lacked proper liability insurance. The court pointed to Ms. Moore's testimony that Mr. Sepulveda instructed her to keep costs down and only maintain remodeling insurance and that she only filled out insurance applications at Mr. Sepulveda's direction. The court found Ms. Moore's testimony credible, while Mr. Sepulveda's testimony was "evasive and not credible."

7

The court further said that Mr. Sepulveda intended to deceive Mr. Adams when he represented that he had proper construction liability insurance. Ms. Moore testified that Mr. Sepulveda told her that he understood that Mr. Adams wanted construction liability insurance. However, the court said that Mr. Sepulveda "deliberated and conducted a cost-benefit analysis" and determined that he would save money by not obtaining the additional coverage.

The court found that Mr. Adams justifiably relied on Mr. Sepulveda's representations that he held construction liability insurance; Mr. Adams had no reason to believe that Mr. Sepulveda was lying about the insurance coverage.

The court determined that Mr. Sepulveda's misrepresentation was a direct and substantial cause of Mr. Adams's damages incurred during the Arriola Lawsuit. Because Mr. Adams relied on Mr. Sepulveda's representations, he was not covered by insurance when construction defects arose and had to pay for defense costs and damages in the Arriola Lawsuit.

Regarding the Settlement Agreement, the court said that Mr. Sepulveda lacked a present intent to perform or had a positive intent not to perform. The court did not find credible Mr. Sepulveda's testimony that he intended to perform and had the financial ability to do so.

The court found that Mr. Sepulveda knew or should have known that he could not perform under the Settlement Agreement, because he lacked the financial wherewithal to do so. Mr. Sepulveda was living off of his savings, his business income had declined by ninety-five percent, and he was involved in a contentious

8

divorce. He knew that the Settlement Agreement required him to pay for prospective defense costs, but he did not allocate any of the $200,000 he received from the sale of his home toward the Arriola Lawsuit.

The court determined that the transfer of the Yorba Linda properties did not indicate an intent to perform; rather, the partial performance was just enough to allow Mr. Sepulveda to obtain a dismissal of Mr. Adams's cross-claims against him. Moreover, the court found that Mr. Sepulveda recklessly disregarded the truth of his representation that he intended to perform fully because he knew that he did not have sufficient assets and was not earning sufficient income to satisfy the Settlement Agreement.

The court found that Mr. Adams justifiably relied on Mr. Sepulveda's representations, even though, by the time he signed the Settlement Agreement, Mr. Adams knew that Mr. Sepulveda had misrepresented the status of his insurance coverage.

The court found that Mr. Sepulveda's misrepresentation was a substantial and important cause of the damages Mr. Adams incurred. It said that there was no dispute that, if Mr. Adams had known that Mr. Sepulveda did not intend to comply with the Settlement Agreement, he would not have agreed to it and could have continued to pursue his cross-claims against Mr. Sepulveda.

Regarding damages, the court granted Mr. Adams's request in full (excluding attorneys' fees). It awarded Mr. Adams damages for his costs of defending the Arriola Lawsuit and satisfying the Arriola Judgment, but subtracted the amount that Mr. Adams

9

recovered from the foreclosure sale of Mr. Sepulveda's residence:

| | |
|---|---|
| Arriola Judgment: | $370,116.55 |
| Arriola Lawsuit Defense: | $195,199.91 |
| Arriola Lawsuit Consultant Fees: | $18,401.81 |
| State Court Action Fees/Costs: | $94,993.43 |
| (Recovery from Sepulveda foreclosure): | ($151,000.00) |
| **Total damages:** | **$527,711.70** |

The court entered its judgment in the amount of $527,711.70 in favor of Mr. Adams, and Mr. Sepulveda timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).  We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in awarding Mr. Adams $527,711.70 and determining that the award was nondischargeable under § 523(a)(2)(A).

## STANDARDS OF REVIEW

In bankruptcy discharge appeals, we review the bankruptcy court's findings of fact for clear error and conclusions of law de novo, and apply de novo review to mixed questions of law and fact.  Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009), aff'd, 407 F. App'x 176 (9th Cir. 2010) (citation omitted).  De novo review requires that we consider a matter anew, as if no decision had been rendered previously.  United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988).

We review the bankruptcy court's findings of fact for clear error.  See Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011); see also Anastas v. Am. Sav. Bank (In re Anastas), 94 F.3d 1280, 1283 (9th Cir. 1996) ("A finding

10

of whether a requisite element of section [ ] 523(a)(2)(A) claim is present is a factual determination reviewed for clear error."). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.), 262 F.3d 725, 729 (8th Cir. 2001) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)); see Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (A factual finding is clearly erroneous if, after examining the evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed."). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003).

"The bankruptcy court's witness credibility findings are entitled to special deference, and are also reviewed for clear error." In re Weinberg, 410 B.R. at 28 (citing Rule 8013; Anderson, 470 U.S. at 573).

"[W]e review the legal standards used in the calculation of damages de novo." R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc., 945 F.2d 269, 272 (9th Cir. 1991) (citing Galindo v. Stoody Co., 793 F.2d 1502, 1516 (9th Cir. 1986)); see Oswalt v. Resolute Indus., Inc., 642 F.3d 856, 859-60 (9th Cir. 2011) ("We review de novo the legal conclusion that damages are available and review for clear error factual findings underlying the damages award."); Ambassador Hotel Co. v. Wei-Chuan Inv., 189 F.3d 1017, 1024 (9th Cir. 1999) ("The district court's

11

computation of damages following a bench trial is reviewed for clear error. However, the issue of whether the district court applied the correct legal standard in computing damages receives de novo review.") (citations omitted).

**DISCUSSION**

**A.    The bankruptcy court correctly determined that Mr. Sepulveda committed fraud in connection with the Partnership Agreement and the Settlement Agreement.**

Section 523(a)(2)(A) excepts from discharge a debt resulting from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Regarding the elements necessary to prove a § 523(a)(2)(A) claim, we have said:

> A creditor seeking to except a debt from discharge based on fraud bears the burden of proof by a preponderance of the evidence to establish each of five elements: (1) misrepresentation, fraudulent omission or deceptive conduct; (2) knowledge of the falsity or deceptiveness of such representation(s) or omission(s); (3) an intent to deceive; (4) justifiable reliance by the creditor on the subject representation(s) or conduct; and (5) damage to the creditor proximately caused by its reliance on such representation(s) or conduct.

Sachan v. Huh (In re Huh), 506 B.R. 257, 262 (9th Cir. BAP 2014) (citing Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010); In re Weinberg, 410 B.R. at 35).

The court found that Mr. Adams satisfied all of these elements for both the Partnership Agreement and the Settlement Agreement. On appeal, Mr. Sepulveda argues that the bankruptcy court erred in finding that he had a fraudulent intent or fraudulently induced Mr. Adams to enter into the Settlement Agreement. He fails to establish that the bankruptcy court committed clear error.

**1. Mr. Sepulveda does not appeal the court's finding of misrepresentation and fraud concerning the Partnership Agreement.**

In its memorandum decision, the bankruptcy court made clear that Mr. Sepulveda committed fraud concerning both the Partnership Agreement and the Settlement Agreement. It independently analyzed each agreement and determined that both satisfied the elements of § 523(a)(2)(A). Mr. Sepulveda's misrepresentations under either agreement form a sufficient basis to deny dischargeability of the debt.

But on appeal, Mr. Sepulveda does not challenge the court's findings regarding the Partnership Agreement. He focuses exclusively on the court's purported errors concerning the Settlement Agreement. On this basis alone, we can affirm the bankruptcy court's finding of fraud under § 523(a)(2)(A).

**2. The bankruptcy court did not err in finding that Mr. Sepulveda committed fraud regarding the Settlement Agreement.**

Mr. Sepulveda argues that the bankruptcy court erred in finding that he had an intent to deceive Mr. Adams and that he fraudulently induced Mr. Adams to enter into the Settlement Agreement. We discern no error.

All of Mr. Sepulveda's arguments challenge the bankruptcy court's factual findings and its findings of credibility. We review these determinations for clear error, giving special deference to the bankruptcy court's credibility findings. See In re Weinberg, 410 B.R. at 28.

**a. Fraudulent intent**

Mr. Sepulveda argues that the court erred by finding, despite his partial performance, that he did not intend to

13

perform fully under the Settlement Agreement. He claims that the court erroneously interpreted his financial situation and that he could have performed on the day the Settlement Agreement was executed.

But the court considered a number of factors when finding that Mr. Sepulveda knew that he could not satisfy the terms of the Settlement Agreement. It found that Mr. Sepulveda could not fully perform because of: (1) Mr. Sepulveda's lack of income caused by a ninety-five percent decline in his income in the two years prior to the execution of the Settlement Agreement; (2) his need to borrow $40,000 from his parents, but his ability to only pay back $20,000; (3) his lengthy, contentious, and expensive divorce proceedings; (4) his inability to work due to childcare responsibilities caused by the divorce; and (5) his failure to set aside for the Arriola Lawsuit any of the $200,000 received from the sale of his home. It also said that, even if Mr. Sepulveda did not have an affirmative intention to not perform, he acted with reckless disregard for the truth. The court found that Mr. Sepulveda's testimony was not credible. The court made proper factual findings supported by the record and did not clearly err.

Mr. Sepulveda argues that his partial performance evidenced his good faith, because he otherwise had no reason to surrender the Yorba Linda properties. The bankruptcy court correctly observed that Mr. Sepulveda surrendered the Yorba Linda properties to Mr. Adams so that he could obtain a quick dismissal of Mr. Adams's cross-claims against him in the Arriola Lawsuit. The court also stated that Mr. Sepulveda's testimony on this

14

topic was not credible. Again, we do not discern any clear error.

Mr. Sepulveda argues that the court should not have relied on his ex-wife's testimony. But the court made specific findings that Ms. Moore's testimony was credible, while Mr. Sepulveda's testimony was not. Mr. Sepulveda does not convince us that these findings were clearly erroneous.

### b. Fraudulent inducement

Mr. Sepulveda argues that the bankruptcy court erred in finding that he fraudulently induced Mr. Adams to enter into the Settlement Agreement. We reject this argument.

He contends that the bankruptcy court conflated its analysis of the Partnership Agreement with the Settlement Agreement, but does not explain how the bankruptcy court confused the issues. He says that the court "relied on previous inaccuracies in testimony in assuming that Appellant did not intend to perform when the Settlement Agreement was made." But there is no indication that the court assumed fraudulent intent in connection with the Settlement Agreement based on its analysis of the Partnership Agreement. Nor does Mr. Sepulveda identify the supposed "previous inaccuracies in testimony." We find no error.

Mr. Sepulveda also argues that he acted in good faith because the Kofdarali Lawsuit settled without further litigation and he offered to satisfy his remaining obligations under the Settlement Agreement for $300,000. But neither of these factors has anything to do with his intent when he entered into the Settlement Agreement. The disposition of the Kofdarali Lawsuit has little or no bearing on his agreement to pay for fees, costs,

15

and judgment in the Arriola Lawsuit. Moreover, Mr. Adams was not obligated to accept the $300,000 settlement offer.

Finally, Mr. Sepulveda argues that the court erred by finding that Mr. Adams had met his burden as to each element of the § 523(a)(2)(A) claim because Mr. Adams did not provide adequate evidence. Mr. Sepulveda fails to expand on this argument. As the bankruptcy court discussed extensively, Mr. Adams provided sufficient evidence to prevail on each element of his claim.

Therefore, we hold that the bankruptcy court did not clearly err in finding that Mr. Sepulveda intended to defraud Mr. Adams.

**B.  The bankruptcy court did not err in calculating Mr. Adams's damages.**

Mr. Sepulveda argues that the bankruptcy court erred in calculating the damages award. His argument is not a model of clarity, but he appears to contend that the bankruptcy court (1) should have applied the profit that Mr. Adams received from the construction of the Arriola Property against the damages award and (2) should have charged him for only half of the Arriola Lawsuit costs and judgment. We disagree on both counts.

**1.  Mr. Sepulveda failed to raise the purported error regarding Mr. Adams's profit from the sale of the Arriola Property with the bankruptcy court.**

Mr. Sepulveda did not specifically argue to the bankruptcy court that he must be credited for the profit that Mr. Adams received from the Arriola Property. Absent extraordinary circumstances (none of which exist in this case), we will only consider on appeal issues that were distinctly raised before the bankruptcy court. See Yamada v. Nobel Biocare Holding AG,

16

825 F.3d 536, 543 (9th Cir. 2016) ("[g]enerally, an appellate court will not hear an issue raised for the first time on appeal"); O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989) ("appellate courts will not consider arguments that are not 'properly raise[d]' in the trial courts"); Ezra v. Seror (In re Ezra), 537 B.R. 924, 932 (9th Cir. BAP 2015) ("Ordinarily, federal appellate courts will not consider issues not properly raised in the trial courts."). An issue "must be raised sufficiently for the trial court to rule on it" in the first instance. In re E.R. Fegert, Inc., 887 F.2d at 957.

Further, Mr. Sepulveda offered no evidence to establish the amount, if any, of profit that Mr. Adams realized from the sale of the Arriola Property. Mr. Sepulveda only uses an estimate or example ("e.g. <$300,000>") of Mr. Adams's profit.

Therefore, we will not consider Mr. Sepulveda's argument that the bankruptcy court should have reduced the damages award by the amount of Mr. Adams' alleged profit on the Arriola project.[3]

**2. The bankruptcy court did not err in compensating Mr. Adams for the full litigation costs.**

Mr. Sepulveda argues that the award overcompensates Mr. Adams. He says that the court should have awarded Mr. Adams only half of the costs of the Arriola Lawsuit. We disagree.

---

[3] Even if we were to consider this argument, we would affirm the bankruptcy court's decision. The measure of damages which the bankruptcy court correctly selected, and which we discuss in the following section, does not require any reduction for such profits.

17

In this case, Mr. Adams offered a calculation of his damages without much explanation, and the bankruptcy court accepted it without much discussion. We may affirm, however, on any basis supported by the record, see Caviata Attached Homes, LLC v. U.S. Bank, N.A., 481 B.R. 34, 44 (9th Cir. BAP 2012), and the record supports that damage award.

Under California law, "[a] plaintiff fraudulently induced to enter into a contract has the power to elect to affirm the contract and sue for damages resulting from the fraud; the plaintiff may recover out-of-pocket damages in addition to benefit-of-the-bargain damages." Wang v. Massey Chevrolet, 97 Cal. App. 4th 856, 872 (2002); see Ifeorah v. Flegal (In re Ifeorah), BAP No. CC-14-1363-KuDTa, 2015 WL 3895502, at *8 (9th Cir. BAP June 24, 2015), aff'd in part, rev'd in part, 2017 WL 1046203 (9th Cir. Mar. 20, 2017) ("The overarching goal of compensatory tort damages is to make the plaintiff whole. In order to accomplish this goal, the trial court typically may consider out-of-pocket damages, benefit-of-the-bargain damages and other measures of damages."). "The benefit-of-the-bargain measure places a defrauded plaintiff in the position he would have enjoyed had the false representation been true, awarding him the difference in value between what he actually received and what he was fraudulently led to believe he would receive." Henry v. Lehman Commercial Paper, Inc. (In re First All. Mortg. Co.), 471 F.3d 977, 1001 (9th Cir. 2006) (citations omitted). Conversely, "[t]he out-of-pocket measure restores a plaintiff to the financial position he enjoyed prior to the fraudulent transaction, awarding the difference in actual value between what

18

the plaintiff gave and what he received." Id.

A plaintiff may choose to affirm or rescind a contract procured by fraud. Under California law, "[i]t is settled law that if a defrauded party is induced by false representations to execute a contract, the party has the option of rescinding the contract or affirming it and recovering damages for the fraud." Persson v. Smart Inventions, Inc., 125 Cal. App. 4th 1141, 1153 (2005) (citation omitted); see Denevi v. LGCC, 121 Cal. App. 4th 1211, 1220 (2004) ("To be sure, the law requires one who has been defrauded into entering into a contract to choose either to 'affirm or rescind' the contract.").[4]

---

[4] When seeking to rescind a contract for fraud, the defrauded party:

> may rescind a contract "[i]f the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." Cal. Civ. Code § 1689. Where, as here, a party seeks to rescind a contract due to alleged fraud in the inducement, the party must allege that he or she justifiably relied on misrepresentations made with the intent to induce him or her to execute the contract. Wilke v. Coinway, Inc., 257 Cal. App. 2d 126, 136 (1967). Additionally, the party must allege that but for his or her reliance on the misrepresentations, the contract would not have been executed. Merced County Mut. Fire Ins. Co. v. State of California, 233 Cal. App. 3d 765, 772 (1991).

Eisenberg v. Citibank N.A., No. 2:13-CV-01814CAS-JPRx, 2016 WL 3410171, at *3 (C.D. Cal. June 15, 2016). The bankruptcy court made appropriate findings that (1) Mr. Sepulveda obtained Mr. Adams's assent to the Partnership Agreement and Settlement Agreement by fraud; (2) Mr. Adams justifiably relied on

(continued...)

19

It is important to recall that there are two relevant contracts in this case, and that the bankruptcy court found that Mr. Sepulveda committed fraud in connection with both of the contracts.

The first contract is the Partnership Agreement, pursuant to which the parties developed and sold the Arriola Property and the Kofdarali Property. The bankruptcy court found (and we have affirmed the finding) that Mr. Sepulveda defrauded Mr. Adams in connection with Partnership Agreement by misrepresenting the status of his insurance. The bankruptcy court's award is consistent with the "benefit of the bargain" measure of damages. (Although Mr. Adams did not explicitly elect to affirm the contracts and sue for damages, the damages calculation he presented to the bankruptcy court makes sense only if he made that election.) If Mr. Sepulveda had proper liability insurance as he represented, Mr. Adams (1) would have received his share of the profits from the sale of the Arriola Property and (2) would not have had to pay any of the costs of resolving the Arriola Lawsuit. To put Mr. Adams in the position he would have occupied had Mr. Sepulveda told the truth about his insurance, Mr. Sepulveda must pay Mr. Adams all of the costs that Mr. Adams paid to resolve the Arriola Lawsuit. In other words, Mr. Adams is entitled to both the profit and all of the litigation and judgment costs arising from the Arriola Lawsuit.

The second contract is the Settlement Agreement. As noted

---

[4](...continued)
Mr. Sepulveda's misrepresentations; and (3) if Mr. Adams had known the truth, he would not have executed the contracts.

20

above, the bankruptcy court found (and we have affirmed the finding) that Mr. Sepulveda defrauded Mr. Adams in connection with the Settlement Agreement because Mr. Sepulveda never intended to perform all of his obligations under that agreement. Based on this fraud, Mr. Adams could elect to rescind the Settlement Agreement (and his damages calculation only makes sense on that basis). The rescission of the Settlement Agreement means that the 50/50 sharing of expenses under that agreement became inoperative.

Mr. Sepulveda argues that the damages award was punitive in nature. This argument has no support. The bankruptcy court did not award Mr. Adams punitive damages. All of the damages are compensatory in nature.

Therefore, the bankruptcy court did not err in calculating damages awarded to Mr. Adams.

## CONCLUSION

The bankruptcy court did not err in determining that Mr. Sepulveda's nondischargeable debt to Mr. Adams totaled $527,711.70. Therefore, we AFFIRM.