**Robert E. TOWNSEND**

v.

**Estell APPEL, Executrix u/w/o Clarence Townsend.**

Supreme Judicial Court of Maine.

Argued March 4, 1982.

Decided June 28, 1982.

David A. King (orally), Bath, for plaintiff.

Snyder & Jumper by Dennis J. Jumper (orally), Wiscasset, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

CARTER, Justice.

After a jury trial in the Superior Court, Lincoln County, the defendant, in her capacity as executrix of the estate of Clarence Townsend, was found liable to the plaintiff in the amount of $20,000. We sustain the defendant's appeal and reverse the judgment.

The plaintiff is the son of the decedent, Clarence Townsend. The plaintiff testified that between 1948 and 1957, he performed manual labor for his father. During this period, the plaintiff was a minor. He did not reach the age of majority until January 8, 1958. The plaintiff repeatedly pressed his father for compensation for his efforts but he was constantly rebuffed. Indeed, the plaintiff testified, he "was told to keep [his] mouth shut and not ask for any pay until the work was done." The plaintiff testified, however, that he was led to believe that his compensation was being set aside; but no cash payments were ever made.

In 1955, the plaintiff's father admitted owing him $20,000 for his labor. The debt was not discussed again until November

1957, when decedent proposed that he give to the plaintiff a parcel of realty and a cottage in lieu of cash. As with the acknowledgement of the underlying debt, the plaintiff's father never reduced this promise to writing. Further, the plaintiff never received a deed to the specified parcel, and title rested, at the time of trial, with the plaintiff's widowed step-mother.

Also presented at trial was testimony that the plaintiff's father had borrowed from the plaintiff several articles of personalty which the plaintiff claimed were either sold by his father or never returned.

At the close of the plaintiff's case-in-chief, the defendant moved to dismiss the plaintiff's claim for the value of his services, on the ground that the claim was barred by the six-year statute of limitations.[1] The presiding justice took this motion under advisement and, after the jury had returned its verdict, denied it, apparently on the ground that Clarence Townsend's conduct was sufficient to estop his representative from asserting the bar of the statute of limitations. The defendant's second motion sought a directed verdict for the defendant on the plaintiff's claim that his father had converted certain personal property of his. Although the jury was not charged on the law of conversion as a basis for the plaintiff's recovery, this motion was similarly denied after the verdict was returned.

■ We conclude on this appeal that even if the corpus of Maine law were to recognize equitable estoppel against the assertion of the defense of the statute of limitations, the evidence could not support its successful application here. We further determine that the jury did not return a verdict favorable to the plaintiff on his claim for conversion.

## I.

The parties agree that the plaintiff's claim for the value of the labor provided to his father is subject to a six-year period of limitations. See R.S.1954, ch. 112, § 90. The parties further acknowledge that the statute did not commence to run until the plaintiff attained majority on January 8, 1958. See R.S.1954, ch. 112, § 97. The instant action, however, was not commenced until August 9, 1979. Thus, unless the defendant is estopped from asserting the statute of limitations, this claim became barred in January of 1964, six years after it accrued.

This Court has never determined whether the availability of a statute of limitations defense in the factual setting presented here may be lost through conduct satisfying the principles of equitable estoppel. It was held in *Livermore Falls Trust and Banking Co. v. Riley*, 108 Me. 17, 78 A. 980 (1911), that the conduct of a fiduciary of a corporation amounted to a concealment from the corporate entity of the existence of a cause of action against him on a note. It was found that this conduct operated to prevent the fiduciary from asserting the statute of limitations as a defense to the corporation's action when it was later commenced. One year later, in *Gray v. Day*, 109 Me. 492, 84 A. 1073 (1912), the Court expressly declined on the basis of the facts there presented to determine whether the statute of limitations defense may be lost through conduct, not amounting to concealment and not involving a fiduciary, satisfying the principles of estoppel. Similarly, in the case at bar, we need not decide whether to adopt the principle that a defendant may be estopped from asserting the statute of limitations through conduct inducing the plaintiff to delay the timely commencement of a legal action, because, even if this doctrine does represent the current law of Maine, the facts of this case could not support its successful application here.

■ A critical element of the successful invocation of the principle of equitable estoppel is the demonstration that the conduct "relied upon must have induced the

---

1. This affirmative defense had also been asserted in the pleadings. It was thereby preserved. *See* M.R.Civ.P. 8(c).

party seeking to enforce an estoppel to do what resulted to his detriment and *what he would not otherwise have done."* *Roberts v. Maine Bonding and Casualty Co.,* Me., 404 A.2d 238, 241 (1979) (emphasis added). *Accord, Martin v. Prudential Insurance Co.,* Me., 389 A.2d 28, 31 (1978) (party asserting estoppel must show, *inter alia,* "that he relied upon another's representations to the extent of performing acts which, but for the inducement, he would not have done"). Promissory estoppel, for example, is defined in this way: "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce *such action or forbearance* is binding if injustice can be avoided only by enforcement of the promise." *Chapman v. Bomann,* Me., 381 A.2d 1123, 1127 (1978), *quoting* Restatement (Second) of Contracts § 90 (Tent.Draft 1973) (emphasis added). Promissory estoppel thus operates to foreclose the putative promisor from denying successfully the evidence of an enforceable promise where his or her conduct induces the promisee to act in accordance with *that* promise.

The gist of an estoppel barring the defendant from invoking the defense of the statute of limitations is that the defendant has conducted himself in a manner which actually induces the plaintiff not to take timely legal action on a claim. The plaintiff thus relies to his detriment on the conduct of the defendant, by failing to seek legal redress while the doors to the courthouse remain open to him. *See, e.g., Zukowski v. Dunton,* 650 F.2d 30, 35 (4th Cir. 1981) (applying Maryland law); *Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir. 1981); *Kupka v. Board of Administration Public Employees Retirement System,* 122 Cal.App.3d 791, 795–96, 176 Cal.Rptr. 214, 217 (1981); *Appeal of Cloutier Lumber Co.,* 121 N.H. 420, 421, 431 A.2d 112, 113 (1981); *Simcuski v. Saeli,* 44 N.Y.2d 442, 448–49, 377 N.E.2d 713, 716, 406 N.Y.S.2d 259, 262 (1978); *Walters v. Ditzler,* 424 Pa. 445, 449–50, 227 A.2d 833, 835 (1967). *See generally,* 51 Am.Jur.2d *Limitation of Actions* § 434 (1970). Only upon a demonstration that the plaintiff had in fact intended to seek legal redress on his claim during the prescriptive period can his failure to file suit be specifically attributed to the defendant's conduct. If, on the other hand, the evidence does not indicate that the plaintiff intended to bring suit, even if the defendant's conduct otherwise satisfies the principles of equitable estoppel, the defendant should not be estopped from asserting the bar.

■ Further, the party seeking to assert the equitable estoppel bears the burden of establishing the facts necessary to support the successful application of the doctrine. *Atkins & Durbrow, Ltd. v. Home Indemnity Co.,* 84 A.D.2d 637, 444 N.Y.S.2d 285, 286 (1981); *Walters,* 424 Pa. at 449–50, 227 A.2d at 835.

The record before us contains no evidence demonstrating directly or supporting a reasonable inference that the plaintiff contemplated during the prescriptive period, the pursuit of his claim for the value of his services through the legal process. The evidence presented to the court below [2] was insufficient to show that the decedent's promise to pay the plaintiff caused the plaintiff to refrain from filing a timely action. Although the court made no express finding as to this element of equitable estoppel, the finding, which we attribute to the court as necessary to its conclusion that estoppel lies here, is clearly erroneous as without support in the record. *See Harmon v. Emerson,* Me., 425 A.2d 978, 981 (1981).[3] Thus, as the plaintiff's action is untimely as barred by the statute of limitations *even if* equitable estoppel against the assertion of a statute of limitations bar is a vital doctrine in Maine, this appeal does not present us

---

2. Although this case was tried before a jury, the parties submitted to the judge this issue of whether the claim for services was barred by the statute of limitations. *Cf.* M.R.Civ.P. 38(d).

3. Because we dispose of the plaintiff's claim for services on this ground, no consideration need be given either to the defendant's alternative challenge, grounded in R.S.1954, ch. 112, § 105 and 14 M.R.S.A. § 860, or to the merits of the claim itself.

with the question of whether the doctrine should be adopted as the law of our jurisdiction.

## II.

The defendant also challenges that part of the judgment which she assumes to have provided relief for the plaintiff's claim of conversion. Her challenges are based on the plaintiff's alleged failure to prove that he demanded the return of his personalty before his father's death, *see General Motors Acceptance Corp. v. Anacone*, 160 Me. 53, 83, 197 A.2d 506, 524 (1964), and on an asserted failure of proof as to the value of the personalty. Concluding that the jury could not have awarded damages for conversion, we do not reach the defendant's specific challenges.

At the close of the plaintiff's case-in-chief, the defendant moved for a directed verdict as to the conversion claim. The presiding justice took this motion under advisement and denied it after the jury returned its single, general verdict and award of $20,000 for the plaintiff. The jury, however, had not been instructed as to the elements of conversion or the computation of damages resulting from the commission of the tort.

A jury's general verdict will be construed as embodying findings favorable to the prevailing party on each distinct issue submitted to it. *Dulski v. Appel*, 172 Conn. 187, 188–89, 374 A.2d 177, 178 (1976); *Vantage Enterprises, Inc. v. Caldwell*, 196 Neb. 671, 674, 244 N.W.2d 678, 680 (1976); *Rissler & McMurry Co. v. Atlantic Richfield Co.*, 559 P.2d 25, 30 (Wyo.1977). As a corollary to this proposition, courts will construe a general verdict in light of the instructions given to the jury. *Elliot v. Ferguson*, 158 Conn. 553, 555, 264 A.2d 556, 557 (1969); *Gough v. Gough*, 238 Ga. 695, 696–97, 235 S.E.2d 9, 10 (1977); *Murphy v. General Motors Corp.*, 55 A.D.2d 486, 489, 391 N.Y.S.2d 24, 26 (1977); *Fjerstad v. Sioux Valley Hospital*, 291 N.W.2d 786, 788 (S.D.1980).

Here, the court failed to instruct the jury on the law of conversion. The issue of conversion was thus never submitted to the jury; its general verdict for the plaintiff is therefore not amenable to the general rule of construction, noted *supra*, that presumes findings favorable to the plaintiff on all issues. The verdict returned by the jury thus necessarily represented one for the plaintiff on the issue of compensation for his labor *alone*. No relief could have been awarded for conversion.[4]

The entry is:

Judgment reversed.

All concurring.

---

4. The plaintiff sought $20,000 for the value of his services and an additional $2,000 for the value of the converted property. The jury's award to the plaintiff was in the amount of $20,000. While the amount of recovery suggests that the jury gave no relief for the alleged conversion, the amount is also compatible with an award of $18,000, as reflecting the jury's evaluation of the value of the plaintiff's labor, and $2,000 for the value of the personalty. It is thus clear that an analysis of the nature of the jury's verdict, based on the amount of its award, necessarily involves speculation into the deliberative processes employed by the jurors. As we cannot properly engage in such an inquiry, the amount of the award here cannot be used as the criterion determinative of the more important underlying issues.