Ronald R. LaCHAPELLE,
Plaintiff, Appellant,

v.

BERKSHIRE LIFE INSURANCE
COMPANY, Defendant,
Appellee.

No. 97–2146.

United States Court of Appeals,
First Circuit.

Heard April 7, 1998.
Decided April 29, 1998.

Mark L. Randall, with whom Daniel G. Lilley Law Offices, P.A. was on brief, for appellant.

K. Douglas Erdmann, with whom William J. Kayatta, Jr. and Pierce Atwood were on brief, for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and LYNCH, Circuit Judge.

SELYA, Circuit Judge.

Plaintiff-appellant Ronald R. LaChapelle appeals from an order dismissing his civil action for breach of contract and intentional infliction of emotional distress against defendant-appellee Berkshire Life Insurance Company (the Company). For the reasons elucidated below, we affirm.

## I

The district court dismissed the appellant's suit on a Rule 12(b)(6) motion. Accordingly, we, like the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory. See Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). In arriving at this determination, we differentiate between well-pleaded facts, on the one hand, and "bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like," on the other hand; the former must be credited, but the latter can safely be ignored. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996).

The operative pleading here is the amended complaint. It alleges that the appellant, a stockbroker, obtained a policy of long-term disability insurance from the Company in 1986. The insurance contract contained a standard clause, tracking Me.Rev.Stat. Ann. tit. 24-A, § 2715 (West 1990), which required the insured to file written proof of any insured loss with the Company and to bring any legal action predicated on the policy within three years of the accrual date.

On February 4, 1991, the appellant was found floating in the Androscoggin River and promptly hospitalized. Doctors treated him for frostbite, hypothermia, and amnesia. They also performed a psychiatric evaluation. Following his discharge on February 8, 1991, the appellant admitted himself to another hospital because of his emotional difficulties. He stayed there for less than two weeks. Psychiatrists attributed his depression to severe stress, resulting from career troubles and pending legal proceedings.

The appellant furnished written proof of loss to the Company, backed by medical evaluations declaring him to be totally disabled from performing his usual occupation. The Company honored the claim and began paying benefits. In due season, LaChapelle's legal bedevilment bore bitter fruit and he pled guilty to criminal charges of theft by misapplication of property. The state court imposed an incarcerative sentence and im-

prisoned the appellant in June 1992. That month, the Company informed him that it would discontinue payments (presumably on the theory that his immurement, not his depression, kept him from functioning as a stockbroker),[1] but that it might resume payments after his release. The Company also offered to settle all policy-related claims for $15,000. The appellant refused the settlement offer but took no immediate action to contest the discontinuance of benefits.

In 1995, the appellant filed another claim for disability benefits, asserting that he was still unable to work as a result of his original disability.[2] The Company denied this claim and the appellant did not pursue it. Two years later, however, he shifted his focus and sued the Company on the ground that it had breached the policy covenants by unilaterally terminating his benefits when he went to prison in 1992. He appended supplemental claims for intentional infliction of emotional distress and violation of Maine's late payment of claims statute, Me.Rev.Stat. Ann. tit. 24–A, § 2436(1) (West 1990), directed to the same event.

The Company moved to dismiss the complaint for failure to state an actionable claim. *See* Fed.R.Civ.P. 12(b)(6). After the appellant amended the complaint, the district court granted the Company's motion. The court concluded that the breach of contract claim was time-barred by virtue of the insurance policy's internal three-year limitations period and that the facts alleged in the amended complaint were insufficient to ground an equitable estoppel. The court also held that the amended complaint failed to state cognizable claims for either intentional infliction of emotional distress or the untimely payment of an insurance claim.

We review de novo a district court's allowance of a Rule 12(b)(6)· motion to dismiss. *See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 17 (1st Cir.1992). Inasmuch as the appellant premised federal jurisdiction on diversity of citizenship and the existence of a controversy in the requisite amount, 28 U.S.C. § 1332(a) (1994), we apply the substantive law of Maine. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Woods–Leber v. Hyatt Hotels of P.R., Inc.,* 124 F.3d 47, 50 (1st Cir.1997). Because the appellant has abandoned his claim under Me.Rev.Stat. Ann. tit. 24–A, § 2436(1), we focus exclusively on breach of contract and intentional infliction of emotional distress.

**II**

We first address the breach of contract claim. Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred. *See, e.g., Street v. Vose,* 936 F.2d 38, 39 (1st Cir.1991); *Kali Seafood, Inc. v. Howe Corp.,* 887 F.2d 7, 9 (1st Cir.1989). Here, the appellant concedes that the three-year limitations period, if untolled, bars his contract claim. He maintains, however, that the doctrine of equitable estoppel, correctly applied, halts the running of the limitations period and vitiates any temporally oriented defense. The district court did not agree. Nor do we.

In Maine, "the gist of an estoppel barring the defendant from invoking the defense of the statute of limitations is that the defendant has conducted himself in a manner which actually induces the plaintiff not to take timely legal action on a claim." *Townsend v. Appel,* 446 A.2d 1132, 1134 (Me.1982). Of course, the lack of a timely filing cannot be attributed to the defendant's conduct unless the plaintiff can demonstrate that he intended to file suit during the permitted period, *see id.,* that the defendant's actions led him to refrain from doing so, *see Roberts v. Maine Bonding & Casualty Co.,* 404 A.2d 238, 241 (Me.1979), and that his forbearance was objectively reasonable, *see Hanusek v. Southern Me. Med. Ctr.,* 584 A.2d 634, 636–37 (Me.1990).

The appellant was on clear notice of his burden. His original complaint in this case did not allege an estoppel, but he filed an amended complaint in an effort to correct that shortcoming. Even then, he failed to

---

1. We take no view as to the bona fides of this eccentric theory.

2. The complaint is silent as to whether LaChapelle had been released from prison by this time.

sketch a factual predicate that would warrant the application of equitable estoppel. For example, the appellant does not allege that he intended to sue during the prescriptive period. More importantly, as evidence of conduct that ostensibly dissuaded him from taking timely legal action, the appellant mentions only the Company's statement to the effect that it might resume payments after his release. As a matter of law, this assertion is insufficient to induce a reasonable person to sit on his rights. *See Townsend,* 446 A.2d at 1134.

We need not belabor the obvious. The Company did not mislead the appellant, but, rather, told him straightaway that it intended to stop paying benefits. It then acted on that stated intention. This should have been a reveille, not a lullaby. By that we mean it should have galvanized a reasonable person into action, not lulled him into a false sense of security. The Company's additional statement—that it "might" subsequently resume payments—conveyed no assurance and does not alter the relevant calculus. In all events, even if the appellant relied on the Company's statement to his detriment, such reliance fails, as a matter of law, to meet the standard of objective reasonableness imposed under Maine law. *See Hanusek,* 584 A.2d at 636–37; *City of Auburn v. Desgrosseilliers,* 578 A.2d 712, 714 (Me.1990).

■ LaChapelle parries by asserting that, given his fragile mental state, he could not be expected to appreciate and act upon the Company's volte-face. Under certain circumstances, perhaps, the standard of objective reasonableness might yield to accommodate a plaintiff with severe mental disabilities (especially if those disabilities are known to the defendant). But this is not such an instance. Though the appellant suffered from depression, he was competent enough to bring his initial claim in a timely fashion, to mull (and promptly reject) the insurer's settlement proposal, and, three years later, to file another claim with the Company. He

does not allege that his condition worsened over time (indeed, at oral argument in this court, his counsel stated that it had not). In short, there is nothing of record here that suggests a lack of capacity or a disability severe enough to warrant an exception to, or a relaxation of, the rule of objective reasonableness.

■ The appellant has one last arrow in his quiver. In his reply brief in this court, he attempts to repair his ruptured breach of contract claim by arguing that, under the public policy of Maine as expressed in Me. Rev.Stat. Ann. tit. 14, § 853, his imprisonment tolled the limitations period.[3] The attempt fails. For one thing, it seems fairly obvious that this statutory tolling provision does not apply to actions brought on insurance policies. We need not resolve this point definitively, however, because the argument is procedurally defaulted. It is settled beyond peradventure that "absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.,* 953 F.2d 17, 21 (1st Cir.1992); *see also Sandstrom v. ChemLawn Corp.,* 904 F.2d 83, 87 (1st Cir.1990) (explaining that an argument raised for the first time in a reply brief is procedurally infirm). There is nothing about this case that counsels against enforcing this salutary principle. Because the appellant failed to raise the statutory tolling argument in the court below, we will not entertain it here.

We have said enough on this score. For aught that appears, the appellant simply neglected to bring suit against the Company in a timeous fashion. On these facts, neither equitable estoppel nor any other tolling device is available to him. *Cf. Sandstrom,* 904 F.2d at 87 (remarking that "equity, after all, ministers to the vigilant, not to those who slumber upon their rights").

3. This statute provides:
 If a person entitled to bring any of the actions under [certain enumerated Maine statutes] is a minor, mentally ill, imprisoned or without the limits of the United States when the cause of action accrues, the action may be brought within the times limited herein after the disability is removed.
 Me.Rev.Stat. Ann. tit. 14, § 853.

### III

 This leaves us with the appellant's tort claim. To recover for intentional infliction of emotional distress in Maine, a plaintiff must show:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe so that no reasonable man could be expected to endure it.

*Colford v. Chubb Life Ins. Co.*, 687 A.2d 609, 616 (Me.1996) (citations and internal quotations marks omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 2433, 138 L.Ed.2d 194 (1997).

 Under Maine's jurisprudence, a court properly may determine, as a matter of law, whether undisputed (or assumed) facts suffice to state a claim for intentional infliction of emotional distress. *See Gray v. State,* 624 A.2d 479, 484 (Me.1993). If those facts would not allow a rational factfinder to classify the defendant's conduct as extreme or outrageous, or if any other element of the tort is lacking, then dismissal is proper.

In this instance, the amended complaint, read favorably to the appellant, falls short in two distinct respects.

 First, stripped of rhetorical flourishes, LaChapelle's amended complaint alleges only the cessation of payments based upon what he characterizes as the Company's legally problematic interpretation of the policy. Although other factors—the appellant's depression, his fall from grace, and his incarceration—lend color to this claim, they do not change its fundamental nature. In fine, the pleaded facts reflect no harm independent of the denial of benefits.

 More is exigible. Maine (unlike many other jurisdictions) does not recognize a cause of action in tort for an unembellished bad-faith breach of an insurance policy.[4] Thus, when a plaintiff premises a claim for intentional infliction of emotional distress on an insurer-insured relationship, the plaintiff-insured must demonstrate that the defendant-insurer caused some harm apart from the withholding of the payments called for by the policy. *See Colford,* 687 A.2d at 616 (explaining that, to maintain such an action against a disability insurer, the insured must demonstrate that the Company's actions "arose independently of its denial of the disability claim"); *see also Marquis v. Farm Family Mut. Ins. Co.,* 628 A.2d 644, 651 (Me.1993) (explaining that the insured must show, for example, that the plaintiff "suffered some accompanying physical injury, or, the contract was such that a breach of it will result in a serious emotional disturbance"). The appellant's amended complaint does not clear this hurdle.

 Second, the Company's conduct, even on the appellant's version of it, cannot reasonably be construed as "so 'extreme and outrageous' as to exceed all possible bounds of decency." *Colford,* 687 A.2d at 616. To be sure, the pleaded facts show cold-heartedness and illustrate why indignant policyholders sometimes question the mores of the insurance industry. But the scenario that the amended complaint depicts, though unattractive, cannot fairly be said to reveal conduct that is atrocious, intolerable in a civilized society, or sufficiently deplorable to trigger liability for emotional distress. *See id.* at 617. Nor could we say straightfacedly that the Company, by ceasing to pay LaChapelle benefits after his confinement, could be "certain or substantially certain" that severe emotional distress would result from its actions. *See id.* at 616. There is thus no basis for a contention that the Company "recklessly" or "intentionally" inflicted emotional distress. *Id.*

In arguing for a contrary outcome, the appellant relies principally upon *Borden v.*

---

4. Maine does recognize a cause of action for breach of an implied covenant of good faith and fair dealing. *See Struck v. Hackett,* 668 A.2d 411,

415 (Me.1995); *Bard v. Bath Iron Works Corp.,* 590 A.2d 152, 153 (Me.1991). The appellant does not advance any such theory here.

**512**

*Paul Revere Life Ins. Co.*, 935 F.2d 370 (1st Cir.1991). His reliance is mislaid. *Borden* stands for the proposition that, *under Rhode Island law*, a bad-faith breach of an insurance contract, without more, may support a claim for intentional infliction of emotional distress. *Id.* at 378. Maine law, unlike Rhode Island law, does not allow a cause of action for intentional infliction of emotional distress to rest solely on a bad-faith breach of an insurance contract. *See Colford*, 687 A.2d at 616; *Marquis*, 628 A.2d at 651.

## IV

We need go no further. The doctrine of equitable tolling is inapplicable on these facts and the limitations period contained in the insurance policy therefore bars the appellant's breach of contract claim. Since the amended complaint fails to allege any other viable claim under Maine law, it follows inexorably, as night follows day, that the lower court appropriately dismissed the suit.

*Affirmed.*