USCA1 Opinion

 

United States Court of Appeals
For the First Circuit
 No. 97-2146

 RONALD R. LACHAPELLE,

 Plaintiff, Appellant,

 v.

 BERKSHIRE LIFE INSURANCE COMPANY,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. D. Brock Hornby, U.S. District Judge]

 Before

 Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Lynch, Circuit Judge.

 Mark L. Randall, with whom Daniel G. Lilley Law Offices, P.A.was on brief, for appellant.
 K. Douglas Erdmann, with whom William J. Kayatta, Jr. and Pierce Atwood were on brief, for appellee.

April 29, 1998

 SELYA, Circuit Judge. Plaintiff-appellant Ronald R.
LaChapelle appeals from an order dismissing his civil action for
breach of contract and intentional infliction of emotional distress
against defendant-appellee Berkshire Life Insurance Company (the
Company). For the reasons elucidated below, we affirm.
 I
 The district court dismissed the appellant's suit on a
Rule 12(b)(6) motion. Accordingly, we, like the trial court, must
accept as true the well-pleaded factual allegations of the
complaint, draw all reasonable inferences therefrom in the
plaintiff's favor, and determine whether the complaint, so read,
limns facts sufficient to justify recovery on any cognizable
theory. See Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16
(1st Cir. 1989). In arriving at this determination, we
differentiate between well-pleaded facts, on the one hand, and
"bald assertions, unsupportable conclusions, periphrastic
circumlocution, and the like," on the other hand; the former must
be credited, but the latter can safely be ignored. See Aulson v.
Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).
 The operative pleading here is the amended complaint. It
alleges that the appellant, a stockbroker, obtained a policy of
long-term disability insurance from the Company in 1986. The
insurance contract contained a standard clause, tracking Me. Rev.
Stat. Ann. tit. 24-A, 2715 (West 1990), which required the
insured to file written proof of any insured loss with the Company
and to bring any legal action predicated on the policy within three
years of the accrual date.
 On February 4, 1991, the appellant was found floating in
the Androscoggin River and promptly hospitalized. Doctors treated
him for frostbite, hypothermia, and amnesia. They also performed
a psychiatric evaluation. Following his discharge on February 8,
1991, the appellant admitted himself to another hospital because of
his emotional difficulties. He stayed there for less than two
weeks. Psychiatrists attributed his depression to severe stress,
resulting from career troubles and pending legal proceedings.
 The appellant furnished written proof of loss to the
Company, backed by medical evaluations declaring him to be totally
disabled from performing his usual occupation. The Company honored
the claim and began paying benefits. In due season, LaChapelle's
legal bedevilment bore bitter fruit and he pled guilty to criminal
charges of theft by misapplication of property. The state court
imposed an incarcerative sentence and imprisoned the appellant in
June 1992. That month, the Company informed him that it would
discontinue payments (presumably on the theory that his immurement,
not his depression, kept him from functioning as a stockbroker),
but that it might resume payments after his release. The Company
also offered to settle all policy-related claims for $15,000. The
appellant refused the settlement offer but took no immediate action
to contest the discontinuance of benefits.
 In 1995, the appellant filed another claim for disability
benefits, asserting that he was still unable to work as a result of
his original disability. The Company denied this claim and the
appellant did not pursue it. Two years later, however, he shifted
his focus and sued the Company on the ground that it had breached
the policy covenants by unilaterally terminating his benefits when
he went to prison in 1992. He appended supplemental claims for
intentional infliction of emotional distress and violation of
Maine's late payment of claims statute, Me. Rev. Stat. Ann. tit.
24-A, 2436(1) (West 1990), directed to the same event.
 The Company moved to dismiss the complaint for failure to
state an actionable claim. See Fed. R. Civ. P. 12(b)(6). After
the appellant amended the complaint, the district court granted the
Company's motion. The court concluded that the breach of contract
claim was time-barred by virtue of the insurance policy's internal
three-year limitations period and that the facts alleged in the
amended complaint were insufficient to ground an equitable
estoppel. The court also held that the amended complaint failed to
state cognizable claims for either intentional infliction of
emotional distress or the untimely payment of an insurance claim.
 We review de novo a district court's allowance of a Rule
12(b)(6) motion to dismiss. See Garita Hotel Ltd. Partnership v.
Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992). Inasmuch as the
appellant premised federal jurisdiction on diversity of citizenship
and the existence of a controversy in the requisite amount, 28
U.S.C. 1332(a) (1994), we apply the substantive law of Maine. 
See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Woods-Leberv. Hyatt Hotels of P.R., Inc., 124 F.3d 47, 50 (1st Cir. 1997). 
Because the appellant has abandoned his claim under Me. Rev. Stat.
Ann. tit. 24-A, 2436(1), we focus exclusively on breach of
contract and intentional infliction of emotional distress.
 II
 We first address the breach of contract claim. Granting
a motion to dismiss based on a limitations defense is entirely
appropriate when the pleader's allegations leave no doubt that an
asserted claim is time-barred. See, e.g., Street v. Vose, 936 F.2d
38, 39 (1st Cir. 1991); Kali Seafood, Inc. v. Howe Corp., 887 F.2d
7, 9 (1st Cir. 1989). Here, the appellant concedes that the three-
year limitations period, if untolled, bars his contract claim. He
maintains, however, that the doctrine of equitable estoppel,
correctly applied, halts the running of the limitations period and
vitiates any temporally oriented defense. The district court did
not agree. Nor do we.
 In Maine, "the gist of an estoppel barring the defendant
from invoking the defense of the statute of limitations is that the
defendant has conducted himself in a manner which actually induces
the plaintiff not to take timely legal action on a claim." 
Townsend v. Appel, 446 A.2d 1132, 1134 (Me. 1982). Of course, the
lack of a timely filing cannot be attributed to the defendant's
conduct unless the plaintiff can demonstrate that he intended to
file suit during the permitted period, see id., that the
defendant's actions led him to refrain from doing so, see Robertsv. Maine Bonding & Casualty Co., 404 A.2d 238, 241 (Me. 1979), and
that his forbearance was objectively reasonable, see Hanusek v.
Southern Me. Med. Ctr., 584 A.2d 634, 636-37 (Me. 1990).
 The appellant was on clear notice of his burden. His
original complaint in this case did not allege an estoppel, but he
filed an amended complaint in an effort to correct that
shortcoming. Even then, he failed to sketch a factual predicate
that would warrant the application of equitable estoppel. For
example, the appellant does not allege that he intended to sue
during the prescriptive period. More importantly, as evidence of
conduct that ostensibly dissuaded him from taking timely legal
action, the appellant mentions only the Company's statement to the
effect that it might resume payments after his release. As a
matter of law, this assertion is insufficient to induce a
reasonable person to sit on his rights. See Townsend, 446 A.2d at
1134.
 We need not belabor the obvious. The Company did not
mislead the appellant, but, rather, told him straightaway that it
intended to stop paying benefits. It then acted on that stated
intention. This should have been a reveille, not a lullaby. By
that we mean it should have galvanized a reasonable person into
action, not lulled him into a false sense of security. The
Company's additional statement that it "might" subsequently
resume payments conveyed no assurance and does not alter the
relevant calculus. In all events, even if the appellant relied on
the Company's statement to his detriment, such reliance fails, as
a matter of law, to meet the standard of objective reasonableness
imposed under Maine law. See Hanusek, 584 A.2d at 636-37; City of
Auburn v. Desgrosseilliers, 578 A.2d 712, 714 (Me. 1990).
 LaChapelle parries by asserting that, given his fragile
mental state, he could not be expected to appreciate and act upon
the Company's volte-face. Under certain circumstances, perhaps,
the standard of objective reasonableness might yield to accommodate
a plaintiff with severe mental disabilities (especially if those
disabilities are known to the defendant). But this is not such an
instance. Though the appellant suffered from depression, he was
competent enough to bring his initial claim in a timely fashion, to
mull (and promptly reject) the insurer's settlement proposal, and,
three years later, to file another claim with the Company. He does
not allege that his condition worsened over time (indeed, at oral
argument in this court, his counsel stated that it had not). In
short, there is nothing of record here that suggests a lack of
capacity or a disability severe enough to warrant an exception to,
or a relaxation of, the rule of objective reasonableness.
 The appellant has one last arrow in his quiver. In his
reply brief in this court, he attempts to repair his ruptured
breach of contract claim by arguing that, under the public policy
of Maine as expressed in Me. Rev. Stat. Ann. tit. 14, 853, his
imprisonment tolled the limitations period. The attempt fails. 
For one thing, it seems fairly obvious that this statutory tolling
provision does not apply to actions brought on insurance policies. 
We need not resolve this point definitively, however, because the
argument is procedurally defaulted. It is settled beyond
peradventure that "absent the most extraordinary circumstances,
legal theories not raised squarely in the lower court cannot be
broached for the first time on appeal." Teamsters, Chauffeurs,
Warehousemen & Helpers Union, Local No. 59 v. Superline Transp.
Co., 953 F.2d 17, 21 (1st Cir. 1992); see also Sandstrom v.
ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990) (explaining that an
argument raised for the first time in a reply brief is procedurally
infirm). There is nothing about this case that counsels against
enforcing this salutary principle. Because the appellant failed to
raise the statutory tolling argument in the court below, we will
not entertain it here.
 We have said enough on this score. For aught that
appears, the appellant simply neglected to bring suit against the
Company in a timeous fashion. On these facts, neither equitable
estoppel nor any other tolling device is available to him. Cf.Sandstrom, 904 F.2d at 87 (remarking that "equity, after all,
ministers to the vigilant, not to those who slumber upon their
rights").
 III
 This leaves us with the appellant's tort claim. To
recover for intentional infliction of emotional distress in Maine,
a plaintiff must show:
 (1) the defendant intentionally or recklessly
 inflicted severe emotional distress or was
 certain or substantially certain that such
 distress would result from his conduct; (2)
 the conduct was so extreme and outrageous as
 to exceed all possible bounds of decency and
 must be regarded as atrocious, and utterly
 intolerable in a civilized community; (3) the
 actions of the defendant caused the
 plaintiff's emotional distress; and (4) the
 emotional distress suffered by the plaintiff
 was severe so that no reasonable man could be
 expected to endure it.

Colford v. Chubb Life Ins. Co., 687 A.2d 609, 616 (Me. 1996)
(citations and internal quotations marks omitted), cert. denied,
117 S. Ct. 2433 (1997).
 Under Maine's jurisprudence, a court properly may
determine, as a matter of law, whether undisputed (or assumed)
facts suffice to state a claim for intentional infliction of
emotional distress. See Gray v. State, 624 A.2d 479, 484 (Me.
1993). If those facts would not allow a rational factfinder to
classify the defendant's conduct as extreme or outrageous, or if
any other element of the tort is lacking, then dismissal is proper.
 In this instance, the amended complaint, read favorably
to the appellant, falls short in two distinct respects.
 First, stripped of rhetorical flourishes, LaChapelle's
amended complaint alleges only the cessation of payments based upon
what he characterizes as the Company's legally problematic
interpretation of the policy. Although other factors the
appellant's depression, his fall from grace, and his incarceration
 lend color to this claim, they do not change its fundamental
nature. In fine, the pleaded facts reflect no harm independent of
the denial of benefits.
 More is exigible. Maine (unlike many other
jurisdictions) does not recognize a cause of action in tort for an
unembellished bad-faith breach of an insurance policy. Thus, when
a plaintiff premises a claim for intentional infliction of
emotional distress on an insurer-insured relationship, the
plaintiff-insured must demonstrate that the defendant-insurer
caused some harm apart from the withholding of the payments called
for by the policy. See Colford, 687 A.2d at 616 (explaining that,
to maintain such an action against a disability insurer, the
insured must demonstrate that the Company's actions "arose
independently of its denial of the disability claim"); see alsoMarquis v. Farm Family Mut. Ins. Co., 628 A.2d 644, 651 (Me. 1993)
(explaining that the insured must show, for example, that the
plaintiff "suffered some accompanying physical injury, or, the
contract was such that a breach of it will result in a serious
emotional disturbance"). The appellant's amended complaint does
not clear this hurdle.
 Second, the Company's conduct, even on the appellant's
version of it, cannot reasonably be construed as "so 'extreme and
outrageous' as to exceed all possible bounds of decency." Colford,
687 A.2d at 616. To be sure, the pleaded facts show cold-
heartedness and illustrate why indignant policyholders sometimes
question the mores of the insurance industry. But the scenario
that the amended complaint depicts, though unattractive, cannot
fairly be said to reveal conduct that is atrocious, intolerable in
a civilized society, or sufficiently deplorable to trigger
liability for emotional distress. See id. at 617. Nor could we
say straightfacedly that the Company, by ceasing to pay LaChapelle
benefits after his confinement, could be "certain or substantially
certain" that severe emotional distress would result from its
actions. See id. at 616. There is thus no basis for a contention
that the Company "recklessly" or "intentionally" inflicted
emotional distress. Id.
 In arguing for a contrary outcome, the appellant relies
principally upon Borden v. Paul Revere Life Ins. Co., 935 F.2d 370
(1st Cir. 1991). His reliance is mislaid. Borden stands for the
proposition that, under Rhode Island law, a bad-faith breach of an
insurance contract, without more, may support a claim for
intentional infliction of emotional distress. Id. at 378. Maine
law, unlike Rhode Island law, does not allow a cause of action for
intentional infliction of emotional distress to rest solely on a
bad-faith breach of an insurance contract. See Colford, 687 A.2d
at 616; Marquis, 628 A.2d at 651.
 IV
 We need go no further. The doctrine of equitable tolling
is inapplicable on these facts and the limitations period contained
in the insurance policy therefore bars the appellant's breach of
contract claim. Since the amended complaint fails to allege any
other viable claim under Maine law, it follows inexorably, as night
follows day, that the lower court appropriately dismissed the suit.

Affirmed.