**In re METROBILITY OPTICAL SYSTEMS, INC., Debtor.**

**Official Committee of Unsecured Creditors, Plaintiff,**

**v.**

**Bank of New Hampshire, N.A., Defendant.**

**Bankruptcy No. 01–12817–MWV. Adversary No. 01–1214–MWV.**

United States Bankruptcy Court, D. New Hampshire.

June 5, 2002.

---

38

John J. Monaghan, Kerry S. Kehoe, Holland & Knight, LLP, Boston, MA, for plaintiff.

Michael S. Askenaizer, Law Offices of Michael S. Askenaizer, Nashua, NH, for defendant.

### MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it Bank of New Hampshire, N.A.'s ("Bank's"/"Defendant's") Motion to Dismiss (the "Motion"),

which seeks dismissal with prejudice of Count I and stay or dismissal without prejudice of Counts II–IV of the complaint of the Official Committee of Unsecured Creditors ("Committee"/"Defendant"). Based upon the record before it and for the reasons set out below, the Court denies the Bank's Motion in its entirety.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

The Debtor filed for bankruptcy protection under Chapter 11 on September 10, 2001 (the "Filing Date"). On October 31, 2001, at a hearing on the Debtor's motion to obtain Secured Postpetition Financing on a Superpriority Basis, the Court entered a preliminary order which provided "[t]hat any objection to the validity, extent, perfection, or priority of the security interest claimed by the Bank shall be deemed waived, and the Bank shall be deemed to have a valid and perfected first-priority security interest in all of the Debtor's assets" unless an objection was filed within thirty days by the Debtor or the Committee. Doc. 103.[1] The Committee subsequently timely filed such an objection on November 30, 2001 (the "Complaint").

The Complaint contains four counts in which the Committee requests that the Court: (I) avoid the Bank's lien on personal property of the Debtor acquired after the Termination Date under 11 U.S.C. § 544(a) because it allegedly failed to comply with the requirements § 402(7) of the Uniform Commercial Code ("UCC")[2]; (II) avoid the Bank's lien under § 544(a) on fixtures, tangible personal property located outside of New Hampshire and other property; (III) determine the amount of the Bank's secured claim; and (IV) disallow the Bank's alleged contingent reimbursement claim arising from the Letter of Credit. The Bank's Motion seeks the dismissal of all counts or, in the alternative, the stay of Counts II–IV.

In support of its Complaint, the Committee sets forth the following factual allegations. The Debtor filed a certificate of incorporation with the Delaware Secretary of State on December 12, 1996 that listed the Debtor's name as "Lancast, Inc." *See* Complaint, ¶ 10. The Bank filed U.C.C. financing statements against the Debtor with the New Hampshire Secretary of State and the Clerk of Nashua, New Hampshire on July 11, 1997. These statements cover "goods and products therefrom, fixtures, accounts, general intangibles, documents, chattel paper and proceeds of the foregoing (the 'Covered Collateral')." *Id.* at ¶¶ 16, 18.

The Debtor and the Bank entered into a revolving credit and security agreement on August 4, 2000 pursuant to which the Bank agreed to issue a Letter of Credit in favor of the Debtor's landlord. *See id.* at ¶ 13. On August 7, 2000, the Bank issued the Debtor's landlord an irrevocable Letter of Credit in the amount of $1,792,000, which served to secure the Debtor's obligations to the landlord under their lease. *See id.* Under this credit agreement, the Debtor granted the Bank "a security interest in goods and products therefrom, accounts,

---

1. In this opinion the term "Doc." refers to the docket in the main bankruptcy case, Bk. No. 01–12817–MWV.

2. Unless otherwise noted, all section references hereinafter are to Title 11 of the United States Code.

general intangibles, documents, instruments, chattel paper, judgment, rights of set off, interest relating to insurance claims or policies, tort claims and deposit accounts with the Bank and proceeds of the foregoing (the 'Collateral')." *Id.* at 15.

On August 10 and 11, 2000, the Bank filed U.C.C. statements with the New Hampshire Secretary of State, the Town of Merrimack, New Hampshire, and the Clerk of Nashua, New Hampshire. These statements pertain to the Covered Collateral. Complaint, ¶ 16. Further, on August 9, 2000, the Bank filed a financing statement with the Hillsborough County Registry of Deeds to perfect its security interest in fixtures. *See id.* at ¶ 17. These August 2000 financing statements and the 1997 statement contain the following information: the Debtor's name as Lancast, Inc., the Bank as secured party, a description of the Collateral, and the signature of the Debtor. Neither of the parties dispute that the Bank originally had a perfected security interest as a result of these statements. However, the parties diverge as to the legal consequence of the amendments to these statements discussed below.

On October 23, 2000, the Debtor filed a Certificate of Amendment with the Delaware Secretary of State, changing its name to "Aura Networks, Inc." Complaint, ¶ 11. On April 24 and 25, 2001, the Bank filed U.C.C. financing statement amendments (the "Amendments") with the New Hampshire Secretary of State, the Town of Merrimack, New Hampshire, and the Clerk of Nashua, New Hampshire, as well as a amendment to its fixture filing with the Hillsborough County Registry of Deeds. *See id.* at ¶ 21. These Amendments reference the original financing statement file number and contain the Debtor's record Lancast, Inc. name and its new name of Aura Networks, Inc., the Bank as secured party, and the Bank's signature.

### DISCUSSION

 The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss any action or any claim within an action for failure to state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), which is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b), the Court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine if the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998); *see also Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001); *TAG/ICIB Serv., Inc. v. Pan American Grain Co.,* 215 F.3d 172, 175 (1st Cir.2000). Thus, a "complaint is properly dismissed only when the allegations are such that 'the plaintiff can prove no set of facts to support [the] claim for relief.'" *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 30 (1st Cir.2000) (quoting *Rockwell v. Cape Cod Hosp.,* 26 F.3d 254, 260 (1st Cir.1994)). The Court's role is not to weigh the merits of the Committee's allegations, but rather to determine if sufficient facts are plead showing that the Committee is entitled to relief. *In re R & R Associates of Hampton,* 248 B.R. 1, 4 (Bankr.D.N.H.2000).

### A. COUNT I

The Bank argues that Count I fails to state a claim upon which relief can be granted because the Amendments to the Bank's financing statements serve to re-

perfect its security interest in the collateral described therein. In opposition, the Committee contends that the Bank has not properly perfected its interest in property acquired by the Debtor four months after its name change because the Bank does not possess new financing statements by virtue of filing U.C.C. financing statement amendments. The issue, therefore, is whether N.H. RSA § 382–A:9–402(2)(d) applies to the Amendments and whether the Bank possessed new financing statements for purposes of N.H. RSA 382–A:9–402(7).[3]

■ The Committee's contention that RSA § 382–A:9–402(2)(d) applies only to financing statements and not amendments, so that the Bank's argument that its amendments served to reperfect its interest is inapplicable to the facts of the case, is supported by the language of the statute and the Official Comments thereto. N.H. RSA § 382–A:9–402(2)(d) allows a creditor, who has otherwise complied with the formal requisites of RSA § 382–A:9–402(1),[4] to perfect its security interest in collateral acquired after a change of the Debtor's name with financing statements signed only by the secured party. See N.H. RSA § 382–A:9–402(2)(d) (2000). However, the RSA § 382–A:9–402(2)(d) exception to the signature requirement of RSA § 382–A:9–402(1) does not appear to apply to amendments, the first reference to which occurs in RSA § 382–A:9–402(4).

N.H. RSA § 382–A:9–402(4) provides that "[i]n this Article, unless the context otherwise requires, the term 'financing statement' means the original financing statement and any amendments." The section further requires that amendments must be signed by both the Debtor and the secured party. Additionally, the Official Comments to section 2 provide "[i]n contrast to the signatures on original financing statements, an amendment to a financing statement must be signed by both parties, to preclude either from adversely affecting the interests of the other." Official Comment 4, N.H. RSA § 382–A:9–402(2). Without Debtor's signature on the amendments, the Bank's theory that the amendments and the original financing statements, taken together, constitute new financing statements fails because, as noted in the Official Comments, the signature requirements of a financing statement referenced in RSA § 382–A:9–402(2)(d) are different from amendments thereto as provided in RSA § 382–A:9–402(4).

■ Further, *PA Record Outlet*, a case cited by the Bank to illustrate that an amendment can be sufficient to constitute a new financing statement when it references the original financing statement but does not otherwise describe the collateral covered by the security interest, is not entirely applicable to the present case.

---

**3.** N.H. RSA 382–A:9–402(7) provides, in relevant part, that:

[w]here the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time.

N.H. RSA § 382–A:9–402(7) (2000).

**4.** N.H. RSA § 382–A:9–402(1) provides, in relevant part, that:

A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

N.H. RSA § 382–A:9–402(1) (2000).

*PA Record Outlet, Inc. v. Mellon Bank,* 894 F.2d 631, 634 (3rd Cir.1990). Although *PA Record Outlet* may address the issue of the missing collateral description for purposes of what constitutes a sufficient financing statement under U.C.C. § 9–402(1), it does not address the missing signature of the Debtor or whether the amendment can satisfy U.C.C. § 9–402(7) if filed outside the provision's requisite four month period. The amendment in *PA Record Outlet* contained the signature of the Debtor, whereas the Bank's amendments in the present case only contain the secured party's signature and not the Debtor's. *Id.* at 634–35. Without the Debtor's signature, the amendments in this case do not meet the requirements for a valid amendment set forth under RSA § 382–A:9–402(4). Further, in contrast to the facts of *PA Record Outlet,* the Bank did not file its amendment before the four month period set forth in RSA § 382–A:9–402(7) had expired. *Id.* at 634.

Additionally, the Bank argues that the "notice filing" purpose underlying the U.C.C. would not be offended by its incorporation by reference arguments concerning its Amendments. The Court notes that in *In re DeNauw's, Inc.,* Judge Yacos described the intention behind RSA § 382–A:9–402 as being the establishment of "a simple form of 'notice filing' which at a minimum requires notice that the secured party 'may have an interest in the collateral described.'" *In re DeNauw's, Inc.,* 47 B.R. 290, 293 (Bankr.D.N.H.1985) (analyzing whether incorporation by reference of the loan agreement in the documents which were actually filed in the local registries of deeds is sufficient to comply with the statutory requirement that a financing statement describing the collateral be filed). However, despite the simplicity of the contemplated filing procedures, the Court went on to further note that there were express provisions in the statute which affected the adequacy of the financing statement in question. *See id.* In the present case, there are also express statutory filing requirements that were not met. Additionally, although *In re Quality Seafoods, Inc.* involved a lapsed financing statement under U.C.C. § 9–403(3), this Court recognizes the Massachusetts Bankruptcy Court's observation that the "simple notice" system purpose would be "frustrated if searchers are required to pore through the records in order to piece documents together." *In re Quality Seafoods, Inc.,* 104 B.R. 560, 561 (Bankr.D.Mass. 1989).

## B. COUNTS II–IV

The Bank argues that Counts II through IV of the complaint are premature and seeks to dismiss them without prejudice or, in the alternative, to stay their consideration for another day. First, the Bank does not allege that these Counts fail to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). Accordingly, the Court denies the Bank's request to dismiss Counts II–IV without prejudice. Second, a stay is not appropriate at this stage of the proceedings as the Debtor has formulated a plan and, accordingly, it would not be premature to litigate the matters set forth in the Committee's Complaint.

### CONCLUSION

For the reasons outlined above, the Court finds that the Committee has alleged facts sufficient to establish the claims set forth in its Complaint. Accordingly, the Court denies the Bank's motion to dismiss Count I of Plaintiff's complaint with prejudice and Counts II–IV without prejudice. Further, the Court denies the Bank's alternative request to stay Counts II–IV. This opinion constitutes the Court's findings and conclusions of law in accor-

dance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.