Luz Miriam TORRES, et al., Plaintiffs,

v.

MENNONITE GENERAL HOSPITAL INC., et al., Defendants.

Civil No. 12–1914 (GAG).

United States District Court, D. Puerto Rico.

Jan. 8, 2014.

David C. Indiano–Vicic, Vanesa Vicens, Jeffrey M. Williams–English, for Plaintiffs.

Anselmo Irizarry–Irizarry, Benito I. Rodríguez–Masso, Ramonita Dieppa–González, Sigrid López–González, Juan M. Masini–Soler, Doris Quiñones–Tridas, Igor Domínguez–Pérez, Elías Fernández–Pérez, Jorge J. López–López, Benjamin Morales–Del–Valle, Francisco E. Colon–Ramírez, Jose A. Gonzalez–Villamil, Jeanette Rodríguez–De León, Jeannete M. López, Juan M. Martinez–Nevarez, for Defendants.

### OPINION AND ORDER

GUSTAVO A. GELPÍ, District Judge.

Defendant Dr. Omar Nieves ("Dr. Nieves"), requested summary judgment and sought the dismissal of the Complaint against him based on various theories, which have already been discussed, all of which relate to the medular controversy as identified in the court's previous Opinion and Order at Docket No. 267: "if a medical malpractice claim is supported against [Dr. Nieves] him to hold him liable for the death of Mr. Ivan Torres." The court denied Dr. Nieves' Motion for Summary Judgment at Docket No. 229 after finding genuine issues of material fact. The court held that, because the record shows that a

material factual dispute does in fact exist in the instant case sufficient to affect the outcome of the present claim as it pertains to Dr. Nieves, summary judgment is not appropriate. Dr. Nieves, however, requests the court to reconsider its Opinion and Order at Docket No. 267 and in turn grant summary judgment in his favor on the grounds of the Good Samaritan doctrine and Puerto Rico's reasonable error in judgment doctrine. For the following reasons, the court **DENIES** the Motion for Reconsideration at Docket No. 279.

## I. Standard or Review

A motion for reconsideration cannot be used as a vehicle to relitigate matters already litigated and decided by the court. *Villanueva–Mendez v. Vazquez*, 360 F.Supp.2d 320, 322 (D.P.R.2005). It is a long standing rule that motions for reconsideration cannot be used to bring forth new arguments. *See Nat'l Metal Finishing Co., Inc. v. BarclaysAm./Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir.1990) (holding that motions for reconsideration may not be used "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier."). These motions are entertained by courts if they seek to correct manifest errors of law or fact, present newly discovered evidence, or when there is an intervening change in law. *See Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*, 37 F.3d 25, 29 (1st Cir.1994) (citing *F.D.I.C. v. World University, Inc.*, 978 F.2d 10, 16 (1st Cir.1992); *Cherena v. Coors Brewing Co.*, 20 F.Supp.2d 282, 286 (D.P.R.1998)). Hence, this vehicle may not be used by the losing party "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier." *National Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir.1990).

## II. Discussion

Dr. Nieves has already contended and pled his arguments in his Motion for Summary Judgment which included the affirmative defenses of the Good Samaritan Law and the reasonable error in medical judgment doctrine. The court considered and rejected Dr. Nieves' arguments in favor of summary judgment for finding that there genuine issues of material fact exist so, Dr. Nieves was not entitled to judgment as a matter of law. (*See* Docket No. 267); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the court finds that some genuine factual issues remain, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Despite the court's finding that summary judgment is not appropriate at this time, the court will entertain Dr. Nieves' latest pleading.

### A. *The Good Samaritan Law*

To incentivize doctors and others to provide assistance in emergency situations, or at least to mitigate the "incentive" not to act, the Puerto Rico Legislature passed the Good Samaritan Law (hereinafter the "Good Samaritan Law") Law No. 139 of June 3, 1976, as amended. Specifically, Section 1 of the Good Samaritan Law provides that persons authorized to practice medicine in Puerto Rico "are hereby exempted from civil liability when, out of the regular course and place of their employment or professional practice, they voluntarily and gratuitously render emergency services or assistance, or without having a preexisting duty to act toward the person who receives the assistance." P.R. Laws Ann. tit., 20 § 31. *Sanchez–Diaz v. UHS of Puerto Rico, Inc.*, Civ. Case No. 07–

1379(FAB), 2009 WL 414425 (D.P.R. Feb. 12, 2009).

The Puerto Rico Supreme Court distilled the statute into a handy six-factor test: (1) the doctor must be authorized to practice medicine in Puerto Rico; (2) the doctor must be acting outside of the course and place of his or her regular employment or professional practice; (3) the doctor must have acted voluntarily; (4) the doctor must have donated the medical services (i.e., acted free of charge); (5) the doctor must have provided the services in the context of a medical emergency; and (6) the services provided by the doctor did not constitute gross negligence or an intent to cause harm. *Id.; see Elias Vega v. Chenet,* 147 D.P.R. 507, 514 (1999). In essence, the Good Samaritan Law provides an affirmative defense which the defendant doctor carries the burden of proving. *Id.*

There is no dispute that Dr. Nieves meets elements 1 and 5 of the test: Dr. Nieves was duly authorized and licensed to practice medicine in Puerto Rico at the time that he treated Mr. Torres, and Mr. Torres' impending heart condition constituted an emergency medical situation. The parties, however, disagree as to the remaining factors of the good samaritan test.

■ The court notes that genuine dispute exists as to how Dr. Nieves first came into contact with Mr. Torres. Plaintiffs claim Dr. Sonia Correa consulted with Dr. Nieves to examine the patient as she had concerns as to Mr. Torres' worsening condition; therefore, she requested Dr. Nieves (who was already in the Emergency Room) to evaluate Mr. Torres. (*See* Docket No. 260 at page 15, 16). On the other hand, Dr. Nieves argues that he "only tended to Mr. Torres because he happened to see Mr. Torres by chance while tending to a patient of his for the potential emergency implant of a pacemak-

er." (*See* Docket No. 229 at 20; Dr. Nieves' Supporting Statement of Material Facts ¶ 60, 31, 67). This issue of fact touches upon the third factor of the good samaritan test and thus, directly affects the validity Dr. Nieves' defense that he acted voluntarily. This outstanding issue of material fact alone precludes a finding for summary judgment on the grounds of the Good Samaritan Law.

■ Dr. Nieves also fails to satisfy the second factor of the test, which although not determinant pursuant to the Supreme Court's ruling in *Elías Vega*, 147 D.P.R. 507, it leads to what is truly important, i.e., that the defendant doctor who provides the care did not have a preexisting relationship and/or obligation that required him/her to intervene. Dr. Nieves claims he had no duty to treat Mr. Torres because he was not his private patient and there was never any pre-existing patient-doctor relationship between them. He also asserts that he has never been an employee of Mennonite Cayey, and has never been paid by Mennonite Cayey to treat patients admitted to the hospital. (*See* Docket No. 229 at 21). Rather, he asserts he was a physician who had been granted "Associate" privileges at the hospital. Dr. Nieves also notes he did not charge anyone for his services rendered to Mr. Torres. (*See* Docket No. 229 at 21).

Plaintiffs, on the other hand, focus on Dr. Nieves' responsibilities as a member of the medical staff of the hospital and argue that he acted within the course and place of his professional practice and was duty-bound by the Bylaws of the hospital to provide medical services to Mr. Torres. This, because, amongst other things, the Bylaws provided emergency privileges to all medical staff. Plaintiffs also argue that Dr. Nieves could have charged Mr. Torres' insurer or otherwise for his services and

the fact that he chose not to do so is immaterial to his good samaritan defense.

The Bylaws of the medical staff of Mennonite Cayey, which Dr. Nieves agreed to follow in order to become a member of the hospital's medical staff, impose upon the staff certain overall responsibilities and goals. These goals include providing "in the above mentioned Hospital an atmosphere conductive to the practice of good medicine, where care of the highest quality will be made available to all ..." and "to treat each individual with dignity and to attend to his needs in the name of Christ and in the Spirit of Christian love." (*See* Docket No. 230–4 at 17). The responsibilities of each member of the medical staff include "providing patients with the quality of care meeting the professional standards of the Medical Staff of this hospital" and "discharging in a responsible and cooperative manner such reasonable responsibilities and assignments imposed upon the member by virtue of Medical Staff membership, including committee assignments." (*See* Docket No. 230–4 at 22). Per the Bylaws, the medical staff should "exercise such clinical privileges as are granted pursuant to Article V". (*See* Docket No. 230–4 at 24). Article V of the Bylaws addresses "Emergency Privileges" for the medical staff. (*See* Docket No. 230–4 at 41). The court notes that both parties are aware of the "Emergency Privileges" section and have studied the text included therein. However, they disagree as to the extent these emergency privileges require its medical staff to participate in emergency medical services.

Even though the court does not preemptively agree with either party, a material issue of facts exists as to whether or not Dr. Nieves was required to render medical services to Mr. Torres or if he could have refused to render such medical services without violating his contractual duty to the hospital. *See Elias Vega*, 147 D.P.R.

at 519; *see also, Sanchez–Diaz*, Civ. Case Num. 07–1379(FAB). Consequently, there is a triable issue of fact regarding whether Dr. Nieves became, for all medical purposes, one of Mr. Torres' treating physicians and whether Dr. Nieves developed a treating physician relationship with the deceased.

It is uncontested that Dr. Nieves was part of the on-call physician list of the Cardiology Department, that he was the only Cardiologist available and was at the Emergency Room at the time of Mr. Torres' emergency. The court weighs the fact that Dr. Nieves played an active and lengthy role in treating Mr. Torres. As such, Plaintiff's argument that Dr. Nieves had a preexisting obligation that required him to intervene with Mr. Torres is compelling. Moreover, the court finds that a fair inference may be drawn from the hospital's Bylaws, given the lack of evidence interpreting their possible ambiguity, that Dr. Nieves had a duty to render emergency medical services to Mr. Torres pursuant to his agreement with the hospital. *See Sanchez–Diaz*, Civ. Case Num. 07–1379(FAB).

Accordingly, Dr. Nieves cannot satisfy the second and third required factors of the good samaritan test. As such, Dr. Nieves fails to satisfy the good samaritan test. The court finds it unnecessary to evaluate the remaining factors further, in view of Dr. Nieves' failure to make the necessary showing with regards to factors two and three. The court thus **DENIES** Dr. Nieves' request for summary judgment on these grounds.

B. *Reasonable Error in Medical Judgment*

■ The court found that genuine issues of fact exist as to a medular matter: whether Dr. Nieves breached the accepted standard of care in treating Mr. Torres. Both parties utilize the STEMI Guidelines

in connection with the issue of the appropriate standard of care employed by Dr. Nieves. However, the parties differ with respect to what the Guidelines dictate. Plaintiffs assert that the "Guidelines clearly dictate that although in patients with suspected STEMI, prompt use of reperfusion therapy (thrombolytic therapy) was associated with improved survival, this option should only be considered absent a contraindication." (*See* Docket No. 260 at 24). Dr. Nieves, however, argues that "there is nothing in the Guidelines indicating that Dr. Nieves should have acted differently." To the extent genuine issues of fact remains concerning the appropriate standard of care employed by Dr. Nieves and the Guideline's interpretation, Dr. Nieves is not entitled to summary judgment on the defense of reasonable error in medical judgment. In turn, the court **DENIES** Dr. Nieves' request for summary judgment on these grounds.

## III. Conclusion

For the reasons explained above, the Court **DENIES** Dr. Nieves' Motion for Reconsideration at Docket No. 279.

**SO ORDERED.**